Argued January 5; reversed February 9; rehearing granted June 14; argued on rehearing September 6; affirmed on rehearing December 30, 1932

## RICE *v.* CITY OF PORTLAND ET AL.

(7 P. (2d) 989, 17 P. (2d) 562)

*George Black, Jr.,* of Portland (Platt, Platt, Fales, Smith & Black, of Portland, on the brief), for appellant MacMarr Stores, Inc.

*Frank S. Grant,* City Attorney, and *Robert A. Imlay,* Deputy City Attorney, both of Portland, for appellant City of Portland.

*B. A. Green,* of Portland (L. V. Lundburg, of Portland, on the brief), for respondent.

RAND, J. Plaintiff brought this action against the City of Portland and the MacMarr Stores, Inc., to recover damages for personal injuries alleged to have been caused by the conjoint negligence of their servants in the operation of two motor trucks, on one of which plaintiff was riding when injured. The defendants separately answered, both setting up contributory negligence as a defense to the action. The cause was tried before a jury and resulted in a judgment for plaintiff for $12,000, from which the defendants have appealed.

At the close of the testimony, defendants separately moved for a directed verdict upon the ground that plaintiff's own testimony affirmatively showed that he had been guilty of contributory negligence. The city also based its motion on the further ground that plaintiff had wholly failed to establish any liability upon the part of the city for the negligence of those in charge of its truck. The trial court overruled said motions, and the correctness of its rulings thereon presents the sole question for decision upon this appeal.

■ Plaintiff was injured about 5 o'clock on the afternoon of November 21, 1929, after he had completed his day's work and while on his way home. On that day and for about seven years prior thereto, he had been employed by the city Bureau of Water Works as a common laborer. In maintaining and operating its water system, the city was acting in a proprietary capacity and not as a governmental agency. On the day preceding his injury plaintiff had worked as one of a construction crew in digging a ditch and laying a water main for the city. After completing his day's work he was about to take a street car when another city employee, who had been left in charge, by its foreman, of a small truck belonging to the city, invited him to ride on the truck. While proceeding thereon, plaintiff sat in a back seat facing the rear and rode with his left leg over the side of the truck with his left foot resting on the back fender and was so riding when injured. This truck was one operated by the city in making house to house connections and repairs of water mains and for other emergency purposes. As so operated, it had a crew of four men consisting of its foreman, a driver, a mechanic and a common laborer. This crew went from place to place wherever their services were required within the city and, while not

so employed, worked at construction work and had been so working with plaintiff on the day of the accident. When work for that day had ceased, the foreman rode home on another conveyance, leaving a vacant seat which the mechanic, who, in the absence of the foreman, was next in charge, invited plaintiff to take. The other three members rode on the truck with plaintiff.

As equipped and operated the truck carried four men, two in the cab and two who sat in the rear on a plank placed across the body of the truck and rode facing backward. Immediately in front of this plank and between it and the rear of the truck, the various tools, supplies and equipment used for emergency work were carried. The back and sides of the truck were open, the curtains being folded up.

Upon being invited to ride plaintiff got on the back seat on the right side of the truck and was riding facing the rear. Because of the tool box being immediately in front of him he placed his right leg on the box and, in order to brace himself, his left leg over the side of the truck, and was riding in that position at the time of the accident. If his leg had not been over the side of the truck he would not have been hurt. He explained his reason for riding in that position by testifying that, because of the box in front of him being higher than the seat and there being no handholds or other means of bracing himself, it was necessary to ride with his left foot on the rear fender to keep from falling out.

After the truck had reached Third street and while proceeding north thereon, it stopped at a point opposite the entrance of a warehouse belonging to the Mac-Marr Stores, Inc., and the driver sounded the horn twice. The truck then started up and proceeded to the opposite side of the street and, while being so driven,

plaintiff's leg was caught between the tailboard of a MacMarr truck and the side of the city truck which resulted in cutting and bruising the flesh but not in breaking any bones of the leg.

Plaintiff's testimony, as well as that of his witnesses, shows that the MacMarr truck had been driven south on Third street to a point opposite said entrance and had then been driven to the east curb of the street and stopped, where it was standing at an angle across the street preparatory to backing into said entrance; that it was a large truck 22 feet long and had its tailboard down, which projected about two feet beyond the back of the truck, and that, as the truck on which plaintiff was riding passed to the rear of the MacMarr truck that truck commenced to back causing the injuries complained of.

Plaintiff testified that he did not look around at any time or withdraw his leg from the position it was then in. His own evidence shows that the contact between the two trucks was very slight; that neither truck sustained any injury and that the only harm done was to himself; and that, if he had been riding with both legs inside the truck, he would not have been injured.

 We think that the city was not liable for the injuries complained of. The rule of respondeat superior applies to a city but only when the relation of master and servant exists between the city and the tortfeasor, and the act of the one whose negligence caused the injury was within the scope of his duties and the duty in which he was then engaged was a private corporate duty as distinguished from a governmental one. 6 McQuillin on Municipal Corporations (2d Ed.) § 2823. It is clear from plaintiff's testimony that at the time of the injury he was not engaged in the performance of

any duty owing to the city. It was not his duty to ride on the truck nor was it the duty of the city to furnish him with transportation. He could have gone home on the street car or found other means of transportation. The truck had not been provided by the city to transport him or any other person except the members of its own crew of which plaintiff was not one. There is no evidence that the city had ever expressly or impliedly authorized any member of this emergency crew to invite any person to ride thereon or to carry any one thereon except its own members and, since the city had conferred no such authority, plaintiff, while voluntarily riding thereon at the unauthorized invitation of those in charge thereof, was not the guest of the city but was the guest of those who had invited him to ride. *Monnet v. Ullman,* 129 Or. 44 (276 P. 244). Here, as shown by plaintiff's testimony, the driver of the city truck was an employee of the city and had authority to drive the truck but, since neither he nor any other person on the truck had authority to carry plaintiff, the city is not answerable to plaintiff for the negligence of the driver for any injuries sustained by plaintiff while voluntarily riding on the truck at the unauthorized invitation of those in charge thereof. While so riding on the truck for purposes of his own and without the knowledge or consent of the city, plaintiff assumed the risk of the driver's negligence and he, and not the city, must bear the loss. The rule that a master, not present at the time, is not responsible for the negligence of his servants in permitting others to ride upon wagons or other like vehicles provided for the servants' use in the employment of the master's business, if done without his knowledge or consent, is well settled, because the granting of permission to ride by the driver is, under those circumstances, not

authorized by the master: *Schulwitz v. Delta Lumber Co.,* 126 Mich. 559 (85 N. W. 1075); *Driscoll v. Scanlon,* 165 Mass. 348 (43 N. E. 100, 52 Am. St. Rep. 523); *Dover v. Mayes Mfg. Co.,* 157 N. C. 324 (72 S. E. 1067, 46 L. R. A. (N. S. 199). See also 2 Mechem on Agency (2d Ed.) § 1913, and other cases there cited.

In this case the plaintiff does not stand in the same position as if he had been run over when crossing the street, for in that case the driver would have authority to drive, while in this he had no authority to carry a passenger. This distinction was recognized in *Monnet v. Ullman,* supra, and *Driscoll v. Scanlon,* supra.

The contention made by plaintiff that if some emergency had arisen while he was riding whereby the crew of that particular truck had been called upon to render some service for the city, plaintiff himself might have been employed in the performance of such service, is wholly immaterial. There was no such emergency. The supposed contingency never happened. Plaintiff was not riding on the truck for that purpose but wholly for his own convenience. Again, it is not to be supposed that an emergency crew employed by the city to do emergency work, which crew consisted of a foreman, a driver, a mechanic and a common laborer, when all but the foreman are present, would require the services of another common laborer or that the plaintiff could have done the work or taken the place of the foreman if an emergency had arisen. Hence, it follows that the motion of the city should have been sustained.

The further question of whether, under plaintiff's own evidence and the admitted facts of his own case, the motions of both defendants should have been sustained because of plaintiff's contributory negligence presents a matter of some difficulty.

■ Ordinarily the question of contributory negligence is for the jury and it is only when but one conclusion can reasonably be drawn from the undisputed facts in a case that it becomes a question of law for the court: *Butler v. McMinnville,* 126 Or. 56 (268 P. 760, 59 A. L. R. 381) ; *Knight v. La Grande,* 127 Or. 76 (271 P. 41, 61 A. L. R. 256). ''When the evidence was given at the trial,'' said Mr. Justice Gray in *Randall v. Baltimore & Ohio R. R. Co.,* 109 U. S. 478 (35 S. Ct. 322, 27 L. Ed. 1003) ''with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.'' ''When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court'': *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 417 (12 S. Ct. 679, 36 L. Ed. 485).

■ Negligence is the absence of care according to the circumstances. This definition of negligence was given by Willes, J., in *Vaughan v. Taff Vale Ry. Co.,* 5 H. & N. 688,'and has had the approval of many eminent judges and textwriters. See 1 Beven on Negligence (3d Ed., p. 9), and cases there cited. Under this definition the same act may be negligent or not negligent, wholly according to its circumstances, for as stated by Beven, ''it is not the act that connotes the negligence but the circumstances.'' As said by Bramwell, B., in *Degg v. Midland Ry. Co.,* 1 H. & N. 781: ''There is no absolute or intrinsic negligence; it is always relative to some

circumstance of time, place, or person." See, also, *Grand Trunk Ry. Co. v. Ives,* supra, where the court said: "The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence."

■■ In determining whether plaintiff was guilty of contributory negligence, the same rules are applicable to his acts and conduct as are applicable to those of the defendants. The care to be exercised by him is governed by the same principles which determine the negligence of the defendants. Each is bound to use ordinary care according to the circumstances and the care which both are bound to exercise varies with the apparent risk. The plaintiff may be negligent in exposing himself to known dangers or dangers which he should know: Jaggard on Torts, 962, and authorities there cited. The law contemplates that every person shall exercise ordinary care for his own protection against injury and, if he fails to exercise such care and such failure, concurring and cooperating with the actionable negligence of defendant, contributes to the injury complained of as a proximate cause, he is guilty of contributory negligence and cannot recover. When contributory negligence is set up as a defense to an action for injuries alleged to have been caused by the defendant's negligence, it means any want of ordinary care on the part of the person injured (or on the part of another whose negligence is imputable to him), which combined and concurred with the defendant's negligence, and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred: Black's Law

Dictionary (2d Ed.), subject negligence, and authorities there cited. The rule that contributory negligence is a bar to an action for personal injuries is based upon the well established principle of the law of torts that no one is entitled to recover an indemnity for an injury of which his own want of care was, either wholly or partially, the efficient cause: 3 Labatt's Master and Servant (2d Ed.), § 1237. The application of this rule is limited to those cases where there is a casual connection between the plaintiff's negligence and the injury. As said by Mr. Justice Field in *Little v. Hackett,* 116 U. S. 366, 371 (68 S. Ct. 391, 29 L. Ed. 652) :

"That one cannot recover damages for an injury to the commission of which he has directly contributed is a rule of established law and a principle of common justice. And it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong. It would seem that the converse of this doctrine should be accepted as sound—that when one has been injured by the wrongful act of another, to which he has in no respect contributed, he should be entitled to compensation in damages from the wrong-doer."

The doctrine of contributory negligence, as developed by the English courts, has to a very large extent been approved and adopted by the courts of this country. The case usually referred to as the first to definitely formulate this rule of law is *Butterfield v. Forrester,* 11 East 60, decided in 1809. There the rule of law was laid down that, although there may have been negligence on the part of the plaintiff, yet, unless he might, by the exercise of ordinary care, have avoided the consequences of the defendant's neg-

ligence, he is entitled to recover. In that case, the plaintiff, who was riding violently, rode against an obstruction in a public highway, wrongfully placed there by the defendant, and was injured. The accident happened at 8 o'clock in the evening in August when dusk was coming on, but the obstruction was still visible one hundred yards off. The jury was directed that if a person riding with reasonable and ordinary care could have seen and avoided the obstruction, and if they were satisfied that the plaintiff was riding along the street extremely hard and without ordinary care, they should find for the defendant, which they accordingly did. In refusing a rule for a new trial, Lord Ellenborough, C. J., said: "One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

In discussing *Butterfield v. Forrester,* supra, the author of Pollock on Torts (13th Ed.), p. 482, after stating that the case is a good example of obvious fault on both sides, where the plaintiff's damage was immediately due to his own want of care, then said: "It was left to the jury whether the plaintiff, riding with reasonable and ordinary care, could have seen and avoided the obstruction; if they thought he could they were to find for the defendant; and they did so. The judge's direction was affirmed on motion for a new trial. 'One person being in fault will not dispense with another's using ordinary care for himself.' Here it can hardly be said that the position of the pole across the road was not a proximate cause—surely it was a direct cause—of the fall. But it was not the whole proximate cause. The other and decisive cause which

concurred was the plaintiff's failure to see and avoid the pole in his way." The author then states, among others, three legal propositions and the authorities which sustain them as follows: "On the whole, then, if the plaintiff's 'fault, whether of omission or of commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong.' Little v. Hackett, (1866) 116 U. S. 366, 371; Butterfield v. Forrester, 11 East 60. On the other hand, if the defendant's fault has been the proximate cause he is not excused merely by showing that the plaintiff's fault at some earlier stage created the opportunity for the fault which was that cause. Radley v. L. & N. W. R. Co., 1 App. Ca. 754, 46 L. J. Ex. 573; Davies v. Mann, 10 M. & W. 546. If it is not possible to say whether the plaintiff's or the defendant's negligence was the decisive cause of the damage, it may be said that the plaintiff cannot succeed because he has failed to prove that he has been injured by the defendant's negligence. Per Lindley L. J., The Bernina, 12 P. D. 58, 59."

The rule of law laid down in *Butterfield v. Forrester,* supra, was approved in *Bridge v. Grand Junction Ry. Co.,* 3 M. & W. 244, where Parke, B., said: "The rule of law is laid down with perfect correctness in the case of Butterfield v. Forrester; and that rule is, that although there may have been negligence on the part of the plaintiff, yet, unless he might, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, he is entitled to recover; if by ordinary care he might have avoided them, he is the author of his own wrong." It is also approved in *Marriott v. Stanley,* 1 M. & G. 568, and *Davies v. Mann,* 10 M. & W. 546.

In *Davies v. Mann,* supra, the facts as set forth in the reported case are substantially as follows: The plaintiff, having fettered the forefeet of an ass belonging to him, turned it out onto a public highway, where at the time of the injury it was grazing on the off side of a road about eight yards wide. The defendant's wagon, with a team of three horses, coming down a slight descent at what a witness termed "a smartish pace," ran against the ass and knocked it down, inflicting injuries from which it died soon after. The ass was fettered at the time, and it was proved that the driver of the wagon was some little distance behind the horses. It was alleged in the declaration that the ass was lawfully in the highway and that allegation was not denied by the defendants. The jury was directed that "if they thought that the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff," which they did. The Court of Exchequer sustained the direction to the jury and Baron Parke, in delivering the principal opinion in the case, said:

"This subject was fully considered by this court in the case of Bridge v. The Grand Junction Railway Co., where, as appears to me, the correct rule is laid down concerning negligence; namely, that the negligence which is to preclude a plaintiff from recovering in an action of this nature, must be such as that he could, by ordinary care, have avoided the consequences of the defendant's negligence. * * * The judge simply told the jury that the mere fact of negligence on the part of the plaintiff in leaving his donkey on the public highway, was no answer to the action, unless the donkey's being there was the immediate cause of the injury; and that, if they were of opinion that it was caused by the fault of the defendant's servant in driving too fast, or, which is the same thing, at a smartish pace, the mere fact of putting the ass upon the road

would not bar the plaintiff of his action. All that is perfectly correct; for, although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road.''

In *Tuff v. Warman*, 5 C. B. N. S. 585, the facts as stated in 1 Beven on Negligence, p. 151, were as follows: Plaintiff's barge was proceeding down the river with two men on board, one at the helm, but with no look-out. A steamer on her right side, and taking such precautions that, if the barge had done the same, would have avoided any collision, ran into the barge and caused the injuries for which redress was sought. The jury found, on the direction of the judge, that the defendant directly caused the injury. Objection was taken that the judge left to the jury whether the plaintiff, by his negligence, ''directly'' contributed to the misfortune; and it was contended for the defendants that whether he directly or indirectly contributed was immaterial, if he contributed to it by his negligence at all. In giving the judgment of the Exchequer Chamber, Wightman, J., said:

''It appears to us that the proper question for the jury in this case, and indeed in all others of the like kind, is, whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary and common care and caution, that, but for such negligence or want of ordinary care and caution on his part, the misfortune would not have happened. In the first case the plaintiff would be entitled to recover, in the latter not; as, but for his own fault, the

misfortune would not have happened. Mere negligence or want of ordinary care or caution would not, however, disentitle him to recover, unless it were such, that, but for that negligence or want of ordinary care and caution the misfortune would not have happened; nor, if the defendant might, by the exercise of care on his part, have avoided the consequences of the neglect or carelessness of the plaintiff.''

The law was definitely settled in the English courts in *Radley v. London and North Western Ry. Co.*, L. R. 9 Ex. 71, on an appeal to the House of Lords by Lord Penzance, who announced the law of contributory negligence in two propositions as follows: ''The first proposition is a general one, to this effect, that the plaintiff in an action for negligence cannot succeed if it is found by the jury that he has himself been guilty of any negligence or want of ordinary care which contributed to cause the accident. But there is another proposition equally well established, and it is a qualification upon the first—namely, that though the plaintiff may have been guilty of negligence, and although that negligence may in fact have contributed to the accident, yet, if the defendant could in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse him.'' The facts of that case as stated by Beven were as follows: ''The plaintiffs, colliery owners, had a siding adjoining the defendants' line, which was crossed by a bridge, and on which the defendants were in the habit of conveying the plaintiffs' trucks from their line, the plaintiffs removing them thence as they thought fit. The defendants brought to the plaintiffs' siding and left there, after working hours, trucks of the plaintiffs, one of which was loaded with a broken truck to such

a height that it would not pass under the bridge. More than twenty-four hours afterwards, but before work was resumed at plaintiffs' works, the defendants, after dark, pushed onto the siding other trucks of the plaintiffs, and pushed the loaded trucks up to the bridge, by which means the train of trucks was arrested. The defendants' servants, not being aware of the cause of the obstruction, pushed the train of trucks forward with so much force that the loaded trucks knocked down the bridge.''

In *Clayards v. Dethick,* 12 Q. B. 439, Coleridge, J., said: "If a man is lying drunk on the road, another is not negligently to drive over him. If that happened, the drunkenness would have made the man liable to the injury, but would not have occasioned the injury.''

In discussing the results of these cases to which we have referred, Beven says in his work on Negligence, supra, p. 155, that:

''Much of the difficulty in fixing the meaning of contributory negligence arises from the ambiguous use of the phrase, 'contributing to the injury.' This may indicate any of the whole set of antecedents necessary to produce the effect, or that one of them which marks their final completion and the actual calling into being of the effect. The *causa sine qua non* of an accident is not that on which depends the legal imputability of the accident. The liability depends not on that, but on the *causa efficiens.* In fact the same test is applicable to the ascertaining what negligence contributes to an injury, as we have already applied to the ascertaining negligence itself. We must trace the negligent consequences to the last responsible agent, who, either seeing the negligent consequences or negligently refusing to see them, has put into motion the force by which the injury was produced. To constitute a responsible agent there must be an accountable human will.''

We have stated the principles enunciated by the English courts because they have been approved and followed generally by the courts of this country and are, we think, the law in this state. It is true that *Davies v. Mann,* supra, has been subject to some criticism by some of the leading textwriters. See the discussion by William Schofield in 3 Harvard Law Review, p. 267. But, as that learned writer states, the case has been cited without criticism by our courts generally, although he says that the question whether the defendant could, by the use of due care, avoid the consequences of the plaintiff's negligence, has been ignored in many of the cases, citing it as an authority.

The qualification of the general rule, as stated by Lord Penzance in the Radley case, was approved in *Inland and Seaboard Coasting Co. v. Tolson,* 139 U. S. 551 (11 S. Ct. 653, 35 L. Ed. 270), where Mr. Justice Gray said: ''The qualification of the general rule, as thus stated, is supported by decisions of high authority, and was applicable to the case on trial.'' The qualification pointed out by Lord Penzance was again approved by the Supreme Court of the United States in *Grand Trunk Ry. Co. v. Ives,* supra, where that court declared that the generally accepted and most reasonable rule of law applicable to actions in which the defense is contributory negligence may be thus stated: ''Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained, if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years, that the contributory negligence of the party injured will not defeat the action, if it be shown

that defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.''

In the discussion made by the writer in 3 Harvard Law Review concerning the case of *Davies v. Mann* and other English cases, he says: ''The results of these several cases, and of the discussion thus far, may be summarized thus: The general rule of contributory negligence, founded largely, if not wholly, upon considerations of public policy, is this: that if a plaintiff has been guilty of any negligence which contributed proximately to the injury, he cannot recover. But it is the duty of both plaintiff and defendant to use due care to avoid the consequences of each other's negligence. If the defendant alone can avoid the accident by the use of due care, and does not, the plaintiff may recover. If the plaintiff alone can avoid it, and does not, he cannot recover. If both can avoid it, neither can recover. If neither can avoid it, the general rule applies, and the plaintiff cannot recover.''

Professor Burdick in the fourth edition of his work on torts, at p. 522, says: ''The present view is that contributory negligence which defeats the plaintiff is negligence on his part, which is a substantial cause of his harm. In a leading English case, the following charge to the jury was held to contain an accurate statement of the true doctrine: 'If both parties were equally to blame, and the accident was the result of their joint negligence, the plaintiff could not be entitled to recover; that, if the negligence or default of the plaintiff was in any degree the proximate cause of the damage, he could not recover, however great may have been the negligence of the defendant; but that, if the negligence of the plaintiff was only remotely connected with the accident, then the question was

whether the defendant might not, by the exercise of ordinary care, have avoided it'." "Speaking generally, if a man does or omits to do an act which is likely to result in damage, under all the circumstances known and which ought to be known to him at the time, his act or omission is the legal cause of that damage." 3 Harvard Law Review, p. 268.

The question of whether, under plaintiff's own showing, he was guilty of such contributory negligence as to bar his right to recover as a matter of law must be determined from the circumstances existing at and just prior to the time of the accident. Ordinarily, danger would not be likely to result to one riding in an open truck with one foot resting on a rear fender and, as a general rule, if an injury did result therefrom, the question of whether the person so riding was negligent would be for the jury.

While a person is not bound to anticipate that another person's negligence will cause him injury unless the circumstances are such that an ordinarily prudent person knows, or, by the exercise of ordinary care, would know, that danger is liable to result from such other person's negligence, yet, where a person riding negligently, or otherwise, knows, or, by the exercise of ordinary care, would know, that some one else is negligent and that such negligence is liable to cause him harm and fails to exercise the care of an ordinarily prudent person to protect himself from such threatened danger, then if he sustains injury because of his failure to exercise ordinary care he cannot recover as a matter of law.

■ Neither of the drivers of whom plaintiff complains knew that he was riding with one of his legs over the side of the truck, or that he was in peril because thereof. They, therefore, had no opportunity to avoid

injuring him by the exercise of ordinary care upon their part after having discovered his peril. Hence, since plaintiff would have known of his peril had he looked and could have avoided the consequences of defendants' negligence, his failure was the proximate cause of his injury. According to his testimony, just before the accident happened the truck on which he was riding had stopped and signalled twice and had then started ahead, crossing to the other side of the street. From this he knew or should have known that there was some vehicle or other object ahead which the driver of the truck was attempting to pass and, since the truck had turned to the left, he knew that this object was on his side of the street and that, in passing it, his leg in its then position would be between the object and the side of the truck on which he was riding. Knowing this, if he had looked, as he should have done, he would have seen the MacMarr truck and would have known of the danger of having his leg on the outside of the truck while passing the MacMarr truck. Knowing this, he neither looked around nor made any inquiry or effort to ascertain what it was that the truck was passing. By the exercise of the slightest effort on his part, he could have withdrawn his leg and, if he had done so, his own testimony shows that he would not have been injured. This clearly shows an absence of ordinary care for his own safety under the circumstances as testified to by him. Without looking or making any effort to protect himself, he intrusted his safety wholly to the driver of the truck on which he was riding. Had he merely looked to his left, he could have seen the other truck and, by withdrawing his leg, have avoided the negligence of the drivers of the two trucks. Under these circumstances, we think his own want of ordi-

nary care and precaution was the cause of his injury and that, therefore, he was the author of his own wrong. If the impact between the two trucks had been such that he would have been injured whether his legs were inside or outside the truck, then his negligence would not have been the cause of the injury but, under the evidence testified to by him, his negligence was a proximate and direct cause of the injury.

In passing the MacMarr truck, there was only a small jolt. The impact was so slight that no harm was done to either truck and the only thing injured was plaintiff's leg and that would not have been injured had it been in a proper position on the truck. The impact was not sufficient to do anything more than cut his leg and bruise the flesh, for none of the bones of the leg were broken. These facts are admitted by the plaintiff and appear as a part of his own case. Hence, while the question of contributory negligence is ordinarily for the jury, here the facts themselves not being ambiguous or capable of two interpretations, the question was one for the court. Plaintiff, through his own fault, combined with the negligence of others, sustained an injury. Under such circumstances, comparative negligence being unknown to our law, plaintiff could not be entitled to recover as both plaintiff and the defendants were to blame, no matter how great the negligence of the defendants may have been.

For these reasons, we are compelled to reverse the judgment and remand the cause to the court below with directions to dismiss the action, and it is so ordered.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.

Former opinion reversed and case affirmed on rehearing
December 30, 1932

On Rehearing
(17 P. (2d) 562)

BELT, J. This is an action to recover damages for personal injuries alleged to have been sustained by reason of the joint negligence of the defendants City of Portland and the MacMarr Stores, Inc. It arose out of the following facts which are, in view of motion for directed verdict, stated in the light most favorable to plaintiff:

On November 21, 1929, at about 5 o'clock p. m., a city truck used by the bureau of water works for emergency repair work was proceeding north on East Third street. The passengers on this car consisted of three members of the emergency repair crew and the plaintiff herein who was employed as a member of a construction gang, digging ditches and laying water mains under the direction of the same bureau. The foreman, who frequently rode home on this truck, had availed himself of other transportation; one of the crew who usually rode in the rear of the truck took the foreman's place beside the driver; and Mr. Rice was invited to ride in the seat thus vacated. Just back of the driver's seat, a cabinet, opening towards the rear and consisting of numerous pigeon holes for fittings, parts, etc., had been erected, which, no doubt, somewhat obstructed the view to the front. Across the truck bed, in front of this cabinet, a loose board had been placed for the convenience of those who might be riding there. Mr. Rice sat on this board on the right side of the truck, with his back to the cabinet and, of course, facing the rear end of the car. In front of him on the truck bed, in

· addition to a large and a small tool box, lay an assortment of tools and larger equipment. His right foot rested on this mass at a slight elevation. His left foot was placed on the fender—but within the lines of the running board—in a position which enabled him to brace himself against the cabinet at his back.

While the city truck was traveling north on East Third street, a truck owned by the MacMarr Stores was being driven south on the same street. The Mac-Marr car swung in to the east curb directly opposite a warehouse located on the west side of the street, with the apparent purpose of backing into it. The left front wheel touched the curb leaving the car extending into the street at a slight angle. At a point some thirty or forty feet away, the city truck came to a short stop, and then, after its horn was sounded, attempted to pass to the rear of the MacMarr machine which, by that time, was backing towards the warehouse. The resulting collision between the endgate of the MacMarr truck and the side of the truck driven by the city did little damage excepting that done to plaintiff's leg which was caught between the two.

On the original hearing the judgment of the lower court was reversed and the cause remanded with directions to dismiss the same. The reasons assigned for reversal were: (1) That at the time plaintiff was injured, while riding on the truck of the defendant city, he was a mere licensee and the evidence failed to disclose any breach of duty which the city owed to him; (2) plaintiff was guilty of contributory negligence.

Relative to the first point, this court said: "There is no evidence that the city had ever expressly or impliedly authorized any member of this emergency crew to invite any person to ride" and that "since the city had conferred no such authority, plaintiff * * * was not the guest of the city, but was the guest of

those who had invited him to ride.'' Plaintiff challenges the accurancy of this conclusion and asserts there is evidence tending to show that he was an invitee of the city and that for several years it had been customary for the city to haul its employees on the truck in question after they had finished their day's work.

 Further examination of the record discloses the following evidence in reference to the alleged custom or practice of the city in transporting its employees. Plaintiff testified:

''Q. I want you to state, if you know, what has been the practice with respect to the City of Portland transporting men in the trucks, including the emergency trucks, to and from the place of work.

\* \* \* \* \*

''A. That is the way we got to work and the way we got from the work.

''Q. Has that been a uniform and universal practice?

''A. Yes sir, after the job started, if it was a big job, large job, then we would go to the shop the next morning and then ride in on the truck to wherever it was handy to get off, but in starting a big job we would report to the job and go to the job.

''Q. Has that been the uniform practice in the city of Portland?

''A. Yes, sir.

''Q. With all their trucks?

''A. Yes, sir.

\* \* \* \* \*

''Q. To your knowledge, for a period of seven years?

''A. Yes, sir.

\* \* \* \* \*

''Q. I want you to tell the jury whether or not it has been the custom and practice to transport workmen on this same emergency truck on which you were riding this day?

''A. It was.''

Mr. Marr, an employee of the city in the water department, testified:

"Q. Mr. Marr, I want to ask here now, what has been the usage, practice and custom of the City of Portland with respect to transportation of its workmen either to or from the places of employment.

\* \* \* \* \*

"A. The custom had been, when reporting on a new job, for a crew of men to report out of the shop, and they hauled them to the job on a truck, and if it was a big job, they stayed on the job until 4:30, with the exception of the emergency crew, they rode with the truck, but the men working on the job, if the truck was there available, going in the direction of their home, they got in and rode in the direction of their home, or to the street car line. As a matter of fact, truck drivers on different occasions have stopped and waited for men, all that could pile on, to get on and ride in the direction of their homes.

"Q. Has that been the universal practice in the City of Portland with the water department?

"A. Yes."

Mr. Hendrickson, an employee of the city and a witness for it, on cross-examination testified:

"Q. Don't you know, as a matter of fact, it has been the custom and practice of the City of Portland to transport their workmen for the job whenever there is a truck there, the workmen then get on and ride towards their home; is that right?

"A. I don't know what they do now. They have gone on, I seen them go on and take a ride and nobody told them to get off.

"Q. That has been the universal custom?

"A. I have seen that many times."

Joe Schmidt, the mechanic in charge of the city truck, who, according to plaintiff's testimony, invited him to ride, testified on cross-examination as follows:

"Q. Don't you know, as a matter of fact, Mr. Schmidt, that through your time of employment by the

city, whenever work ceased at 4:30, whenever any employee of the City of Portland wanted to get on a truck, they just got on and rode to wherever they wanted to get off?

"A. Yes, they got on a truck and rode.

"Q. That has been the uniform practice, whenever they wanted to, isn't that right?

"A. Up to a certain time.

"Q. That is up to the time after this accident?

"A. You mean in regard to riding?

"Q. Yes, getting on the truck and riding ten blocks or riding to your home?

"A. I never heard any orders to that effect, to keep them off."

Mr. Stover, the driver of the city truck, testified, in effect, that, since he had been driving, it had always been the custom for employees to ride to and from the place of work.

In the light of this evidence, we are not prepared to say that the plaintiff was a mere licensee to whom the city owed only the duty of avoiding willful or wanton injury. Assuming the above testimony to be true, plaintiff was clearly an invitee of the city and it was its duty to exercise due care to avoid injuring him. The evidence tends to show that the employee in charge of the city truck had the apparent, if not the actual, authority to invite plaintiff to ride.

Since there is evidence tending to show an established custom or practice of employees riding on trucks, including the one in question—of which the city in the exercise of reasonable diligence ought to have known—it is not for the court to declare as a matter of law that the plaintiff who rode pursuant to such custom was a mere licensee. We think the trial court did not err in submitting to the jury the issue as to whether plaintiff was an invitee or a mere licensee: *Hayes v. Pine State Creamery Co.,* 195 N. C. 113 (141 S. E. 340);

*Rosenbaum v. St. Paul & D. Ry. Co.,* 38 Minn. 173
(36 N. W. 447, 8 Am. St. Rep. 653) ; *Flanagan v. Webster & Webster,* 107 Conn. 502 (142 Atl. 201). This rule
is also recognized in *Monnet v. Ullman,* 129 Or. 44 (276
P. 244), although the facts therein are entirely different
from those of the one under consideration, as the court
there stated :

"* * * where there is no evidence of a practice
on the part of the driver to carry passengers so commonly that it should be presumed that the employer
must have known of its occurrence, the employer is not
liable * * *."

But the city asserts that it had a rule prohibiting
employees from riding on such emergency trucks.
Relative to a similar contention, the court, in *Hayes v.
Pine State Creamery Co.,* supra, said :

"But if such rule had been expressly waived or
abrogated, or if the rule had been openly, constantly,
or habitually violated for such length of time that the
employer, in the exercise of ordinary care and diligence, knew or should have known of such habitual nonobservance, then the rule is deemed by law to have been
waived or abrogated, and in such event the owner becomes liable for such negligence on the part of the
driver."

Also see *Finnegan v. Missouri Pacific Ry. Co.,* 261
Mo. 481 (169 S. W. 969). In the instant case plaintiff
testified that he had no knowledge or notice of any
rule prohibiting employees from riding on city trucks.
▓▓▓▓ Was the plaintiff guilty of contributory negligence? Ordinarily, contributory negligence is a question of fact for the jury. It is only when all reasonable
minds would concur on the question of negligence that
the court is justified in so declaring as a matter of law.
Justice RAND, in an able and painstaking opinion, on
original hearing, has well stated the fundamental prin-

ciples underlying the law of negligence. The only difference of opinion which has arisen is by reason of the application of the law to the particular facts involved in this case. It is well settled that plaintiff was not bound to anticipate negligence. Indeed, he had a right to assume, in the absence of notice to the contrary, that the rules of the road would be obeyed by both truck drivers. In determining whether he failed to exercise due care to avoid injury we must measure his conduct by that standard of care which an ordinarily prudent person would have exercised under all the facts and circumstances as they appeared to exist. As stated in *Santoro v. Brooks,* 121 Or. 424 (254 P. 1019), "In the quietude of the office, it is comparatively easy to demonstrate by mathematical calculation, after an accident has happened, that it could have been avoided * * *." But such is not the test. The more pertinent inquiry is: Did the plaintiff fail to do that which an ordinarily prudent person would have done under the same circumstances?

We are convinced that plaintiff's position on the truck was not such as to enable this court to say, as a matter of law, that it was one of such imminent danger and peril that no person of ordinary prudence and caution would assume it. As stated in *Louisville Gas Co. v. Fry,* 147 Ky. 754 (145 S. W. 748):

"* * * it is not in every instance where one exposes himself to a known danger and injury results that he is denied a right to recover, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence under like circumstances would not subject himself to it."

There is a wealth of authority that it is not, in the absence of statute, negligence per se for a person to ride on the running board of an automobile. Whether

such conduct is negligence ordinarily presents a question of fact for the jury to determine: *Holmes v. Goble,* 132 Or. 540 (285 P. 822) ; *Gavin v. Cohn,* 5 N. J. Misc. 296 (136 Atl. 330) ; *Rose v. Cartier,* 45 R. I. 150 (120 Atl. 581) ; *Anderson v. Detroit Motorbus Co.,* 239 Mich. 390 (214 N. W. 172) ; *Cincinnati N. & C. Ry. Co. v. Rairden* 231 Ky. 141 (21 S. W. (2d) 236) ; *Paducah Ry. Co. v. Nave,* 204 Ky. 733 (265 S. W. 289) ; *Sanford v. Gideon-Anderson Co.* (Mo. App.), 31 S. W. (2d) 580. If it be not negligence as a matter of law to ride on the running board of an automobile, it follows that it was not negligence for plaintiff thus to ride on a seat in the auto truck with his left foot resting upon the fender and within the lines of the running board.

The principal contention of the defendants, however, is that the plaintiff failed to exercise due care to avoid injury after having assumed such a position on the truck. More specifically, it is asserted that the accident could have been avoided had he lifted his left foot upon being reasonably apprised of a pending danger. The fallacy of this contention, in our opinion, is that it assumes, as a matter of law, that plaintiff had reasonable grounds for believing that he was in imminent danger. There was nothing unusual about the sounding of the horn by the driver of the city truck when he attempted to pass the MacMarr truck. It might well be argued that plaintiff had no reason to believe that the MacMarr truck, without signal or warning, would suddenly back into the street and collide with the truck upon which he was riding. The plaintiff had no control over the operation of either truck and it is doubtful if, in the exercise of reasonable care, he could have done anything to prevent the collision. It is suggested that, if his foot had not been on the fender, he would not have been injured, and that

such conduct on his part proximately contributed to the injuries of which he complains. In *Stout v. Lewis,* 11 La. App. 503 (123 So. 346), this contention is thus answered:

"It is not sufficient to say that he would not have been hurt, if he had not been on the running board, because he might have remained upon the running board until he had reached his destination without injury, but for the negligent management of the car, on the running board of which he was riding; a risk which he did not assume."

In the instant case it is to be borne in mind that plaintiff's leg did not protrude beyond the lines of the running board.

Viewing the record in its entirety, we are convinced that whether plaintiff exercised due care to avoid injury was a question of fact for the jury to determine.

It follows that the judgment of the lower court is affirmed.

RAND, J., dissenting:

The undisputed evidence in this case showed that the City of Portland, in the operation and maintenance of its water system, operated two kinds of trucks— one kind for emergency purposes, the other for other purposes; that these emergency trucks were small trucks and were designed and intended to carry four persons only, and such supplies, tools and equipment as were required for repairing defective mains and for other like emergency work. To each of them there were assigned four men, the foreman of a particular district, a driver, a mechanic, and a common laborer, and so far as the evidence shows no person except the regular crew ever rode on any one of these trucks until the evening on which plaintiff sustained the injuries

complained of. On the other class of trucks not used for emergency purposes, the evidence showed that employees were permitted to ride. The only evidence we can find in this record by which plaintiff sought to show a custom for employees to ride on emergency trucks is the following:

"Q. I want you to state, if you know, what has been the practice with respect to the City of Portland transporting men in the trucks, including the emergency trucks, to and from the place of work. * * * A. That is the way we got to work and the way we got from the work. Q. I want you to tell the jury whether or not it has been the custom and practice to transport workmen on this same emergency truck on which you were riding this day? A. It was."

Standing alone and unexplained, this testimony might be sufficient to show a custom to carry employees generally upon these emergency trucks, but when it is remembered that there is no evidence that any person ever rode on any emergency truck with the exception of its own crew, except in the one instance referred to, the fallacy of this contention becomes apparent. Several months before plaintiff sustained his injury, he had been a member of an emergency crew and, of course, while so employed was one of the four employees carried on the emergency truck. He knew that there was no custom permitting the employees generally to ride on these trucks. He was not a member of the crew when injured and does not claim to have had any special authority from any one authorized to grant it when he boarded the truck on the evening in question. He did so at the invitation of the mechanic, the foreman having gone home on another conveyance. Having been formerly employed as a member of the emergency crew, he was charged with knowledge of the limitation which the city had placed upon the use

of this truck by any one except those regularly employed to work with it. He was voluntarily riding upon the truck without the knowledge or consent of the city or of any person authorized to speak or act for the city, and at most he was a mere licensee: *Monnet v. Ullman*, 129 Or. 44 (276 P. 244); *Gruber v. Cater Tr. Co.*, 96 Wash. 544 (165 P. 491, L. R. A. 1917F, 422).

There was no evidence that the driver of the truck on which he was riding was guilty of gross, willful or wanton negligence and, hence, the city is not answerable to him for any injuries he sustained while riding on the truck. The invitation given to him by the mechanic was not in the course of the employment of the mechanic, nor was it within his authority to permit the plaintiff to ride and thereby to create a liability upon the part of the city for any harm plaintiff might suffer while so riding. Plaintiff was voluntarily riding on the truck and assumed all the risks incident to such riding. It was error, therefore, for the trial court to refuse to sustain a motion of the city for a nonsuit, as was held in our former opinion.

It was again contended on rehearing that the court erred in holding that the plaintiff was guilty of contributory negligence in riding in the position in which he was riding at the time of his injury, after he had been warned by the stopping of the truck and the sounding of the horn of some obstruction ahead, of which he took no notice. If there was error in such holding, it was more favorable to plaintiff than he was entitled to. It seems to us, after further consideration of the case, that plaintiff was the sole cause of his own injury. In passing the MacMarr truck which was parked on the curb opposite an entrance to the Mac-Marr warehouse and on the same side of the street on which plaintiff was riding, one of the corners of the

tailboard of the MacMarr truck came into contact at one point with the side of the truck on which plaintiff was riding. No appreciable damage resulted to either truck therefrom and neither driver knew that there had been any accident until plaintiff exclaimed that he had been hurt. That the trucks came into slight contact, however, is shown by a small spot on the side of the city truck where the paint was scratched. If plaintiff had not been riding with his leg extending over the side of the truck, he could not have been injured and, since neither driver knew or could have known that he was riding in that position, neither of them was bound to take any precaution to protect his leg while in that position. It was their duty in passing each other to leave enough space between the trucks to prevent a collision between them but they were not bound to anticipate that plaintiff's leg was over the side of the truck and might be injured if more space than the mere clearance of the trucks themselves was not provided for. That being so, they owed no duty to plaintiff to provide for a greater clearance than would have been necessary if both of his legs had been within the body of the truck. Hence, as to him, since he would not have been hurt if he had had both his legs in the truck, there was no actionable negligence upon their part, even though their failure to provide for a greater clearance between the trucks may have been a negligent act upon their part. As said in 45 C. J. 631:

"Even though an act or omission may involve a lack of care and thus constitute negligence in the colloquial meaning of the term, it does not necessarily follow that any cause of action arises therefrom. To constitute actionable negligence there must be not only a lack of care, but such lack of care must involve a breach of some duty owed to a person who is injured in consequence of such breach. Another statement of the

rule is: In every case involving negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of defendant to protect plaintiff from the injury; (2) failure of defendant to perform that duty; and (3) injury to plaintiff from such failure of defendant. When these elements are brought together, they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient.''

Contributory negligence imports that the defendant has been negligent but excuses him from liability because the plaintiff was also negligent and his negligence was a proximate cause of the injury and an element without which the accident would not have happened. In the nature of things, it rarely occurs that all these elements are free from dispute and, hence, in most cases the question of contributory negligence is for the jury, but in this case the facts are not in dispute. They appear from plaintiff's own case and from his own testimony and show that if he had been riding in the usual and customary way, there would have been no accident and no harm could have resulted to him. Hence, cases like *Holmes v. Goble,* 132 Or. 540 (285 P. 822), and other cases of a like nature, cited by plaintiff, holding that riding on the running board of an automobile or with one leg over the side of the automobile is not, in itself alone, contributory negligence as a matter of law, have no application to the facts of this case, where it was admitted that the manner of so riding was a proximate cause of the injury without which no harm could have resulted to plaintiff.

It must be evident to all reasonable minds that it is more dangerous to occupy such a position as plaintiff was occupying than it would have been if his leg had not been extended over the side of the truck.

While riding in that precarious position, he was bound to exercise more care to protect himself from harm than if he had been riding in the usual and ordinary way and had had his leg in a reasonably safe place. He admits that while so riding he was advised of a traffic condition ahead which necessitated the stopping of the truck and later the driving of it over to the left side of the street. He knew or should have known that in passing this traffic his leg would be exposed to greater danger because of his position on the truck. His attention was called to the situation and he says he started to look around but the movement of his body against his clothing made him feel cold so he desisted and made no further effort to ascertain what he was about to pass. If he had looked he would have seen and he could have avoided the danger. His failure under the circumstances with which he was then confronted was not a condition but the direct and proximate cause, if not the sole cause, of his injury. Whether his conduct amounted in law to contributory negligence upon his part or was the sole cause of his injury, in either event the defendants are not answerable.

When a passenger on a railroad train voluntarily puts himself in a dangerous position by allowing any part of his body to protrude out of a window beyond the outer surface of the car, it is negligence per se and prevents a recovery for an injury caused thereby. See 2 Wood on Railroad Law (2d Ed.), 303. While it is true that such cases are not, in all respects, analogous to the one involved here and the liability of the railroad grows out of contract and not tort, yet its obligation to passengers is based on the absence of negligence upon its part, and the principle that every person is bound to exercise due care for his own safety and holds him remediless if he has voluntarily placed himself in a

place of known danger and has been injured thereby without the fault of defendant, we think applies as forcibly, under the facts of this case, as in railroad cases.

We think that all reasonably prudent men must agree that the manner in which plaintiff was riding when injured was obviously less safe and exposed plaintiff to far greater danger than if he had been riding with both legs within the body of the truck, and that if he had exercised his natural faculties after being warned at the time he received the injury, he would have seen and could have avoided all harm to himself. If this assumption is correct, and we think it is, then it became a question for the court and the court was bound to declare that the plaintiff could not recover because of his contributory negligence. The rule applicable thereto, as we view the evidence, is stated in 42 C. J., p. 1175, as follows:

"An occupant of a motor vehicle who, without some reasonable necessity or excuse, rides in a place or position which he knows, or in the exercise of ordinary care should know, exposes him to danger, is guilty of contributory negligence if such conduct contributes proximately to cause his injuries."

*Guilfoile v. Smith,* 97 Conn. 271 (116 Atl. 237); *Gilbert v. Kansas City R. Co.,* 109 Kan. 107 (197 P. 872); *Smith v. Ozark Water Mills Co.* (Mo. App.), 238 S. W. 573.

For these and the reasons stated therein, our former opinion should be adhered to.

CAMPBELL, J., concurs in this dissent.