Argued May 7, affirmed June 27, 1951

# JENSEN *v.* SALEM SAND AND GRAVEL COMPANY

### 233 P. 2d 237

*James Arthur Powers,* of Portland, argued the cause for appellant. With him on the brief were Sam

Van Vactor, of The Dalles, and James M. Burns, of Portland.

*Alan F. Davis,* of Portland, argued the cause for respondent. With him on the brief was Kenneth M. Abraham, of Hood River.

Before BRAND, Chief Justice, and ROSSMAN, LATOURETTE, WARNER and TOOZE, Justices.

## LATOURETTE, J.

Plaintiff (respondent), a pregnant woman, recovered a $7,500.00 judgment against defendant (appellant) by way of damages arising out of an injury she sustained while crossing a sewer ditch which had been excavated but partially refilled by defendant.

During the course of the trial, defendant moved for an involuntary nonsuit and a directed verdict on grounds that plaintiff was guilty of contributory negligence as a matter of law. Both motions were denied. After the verdict was returned, defendant moved for a judgment notwithstanding the verdict on the above grounds, which motion was also denied. Whereupon the present appeal was taken.

Defendant's sole assignment of error is: "The Court erred in denying Defendant-Appellant's motion for judgment notwithstanding the verdict because Plaintiff was guilty of contributory negligence as a matter of law."

Under the above assignment, defendant makes the following point: "Plaintiff was contributorily negligent as a matter of law for proceeding in the dark on a street which she knew was under repair and in which a ditch had been excavated."

■ To properly arrive at a decision in this matter, it is necessary to consider the evidence in the light most favorable to plaintiff. The evidence discloses that defendant over a period of several weeks prior to the accident was installing a sewer system on State Street in Hood River, a portion of which extended in front of and parallel to plaintiff's residence and being five to five-and-one-half feet in depth and several feet wide. Before the work was commenced, because of the fact that the garage was too small, the family automobile was customarily parked on the gravel shoulder of the street in front of plaintiff's house. While the work was in progress, she would leave the car at the end of the block quite some distance from the place where she fell and proceed by safe passage to her home. On the day of the accident before going to her doctor's office about 2:30 o'clock in the afternoon, she noticed that the defendant was filling in the ditch on the block in front of her property. A portion of her testimony regarding her observation of this work follows:

"Q. How far, to the best of your knowledge, had they filled in this ditch?
"A. Well, just right down in front of our house.
"Q. To the front of your home?
"A. Yes.
\* \* \*

"Q. In the afternoon as you walked up the street, what did you observe at two thirty, going down to Doctor McCain's office?
"A. The men were working there then. They had a bulldozer, pushing dirt, filling in this big ditch.
"Q. They were filling in the ditch along the house there?
"A. Yes.
\* \* \*

"Q. You stated it [the ditch] was partly closed and partly open?

"A. I mean the ditch had been partly closed down as far as in front of our house, and they were still working; it was partly closed and partly open.

\* \* \*

"Q. When you left you judge that was open?

"A. Yes, they were working that way."

Although a portion of State Street to the east had been barricaded by defendant with appropriate lights, residents were permitted to proceed along the street for the purpose of reaching their respective residences. On the day plaintiff had observed the backfilling of the ditch, she, riding with her husband in his automobile, started home between 7:30 and 8:00 o'clock at night, with the car lights burning, from the restaurant where she was employed. As to plaintiff's movements prior to the accident, we have her following testimony:

"Q. As you drove up to your home, with your lights you could observe that that [the ditch] had been filled in; is that correct?

"A. That's right.

"Q. You did not observe a hole or ditch?

"A. No, I didn't.

\* \* \*

"Q. You came on down the street. Where did you park your car—exactly?

· "A. We pulled right in front of the house, where we had always parked our car previous to this work.

\* \* \*

"Q. Did you observe a large mound of earth there at your driveway at that time?

"A. There was mounds of earth, excess dirt that they didn't use; they piled it to be moved away.

"Q. Was there quite a considerable mound of earth there?

"A. I noticed some dirt.

\* \* \*

"Q. Had you observed any banks of dirt coming down State street, or did you observe any open holes as you were driving up the street that night?

"A. Coming up the street we saw extra dirt that they didn't use in their fillings that was mounded up, but I didn't see any holes at all.

\* \* \*

"Q. Where was that mound of earth with reference to the excavation which you fell into?

"A. It was at the side of it.

\* \* \*

"Q. You knew those piles were there?

"A. Yes."

According to plaintiff's testimony, the accident itself occurred as follows:

"Q. Relate how you drove, what you did?

"A. Well, as is customary, we went up Oak street to 13th, cut through the Park, and I remarked to my husband: 'I am sure glad this is all filled in, because we can drive down in front of the house now.' We pulled in, parked the car, and I stepped out of the car. As I stated, it was very dark, and the next thing I knew he was helping me out of this hole.

"Q. Do you recall, as you got out of the car to walk, did you take any steps at all, Mrs. Jensen?

"A. I believe I took a few steps toward our driveway.

"Q. Did you step into the dirt or did you step into the hole, or what?

"A. First I stepped into this loose dirt, then I was just gone. There was nothing to grab on to, or anything. When my foot gave way in this loose dirt, I just was thrown right into this hole.

"Q. Were there any barricades on this hole at all?

"A. None whatsoever.

"Q. Any lights of any kind, any red lights at all?

"A. No lights.

\* \* \*

"Q. \* \* \* Will you explain, after you went in the ditch, do you recall the relative position you were in? Could you get out yourself?

"A. No, I couldn't get to my feet, because my feet were in this loose dirt, and the main part of my body was down in the bottom of the hole."

The photographs introduced in evidence show that the dirt had been filled in in front of plaintiff's driveway, except that portion where the hole was. Plaintiff's husband placed a mark on a photograph of the scene of the accident and in his testimony said:

"A. \* \* \* She would come out of the door of the car approximately there and walked over and up through the passageway; that would be the head of the car in here."

and further:

"Q. At this occasion, as you drove down State street, did you observe any difference in the construction?

"A. Nothing, but there was just a few small piles of dirt, and the rest of it had evidently been pushed into the hole; and it was open up to my home there, and I pulled over as I had normally done before."

Defendant's witness, Mr. Hobson, the county surveyor, testified in regard to the ditch as follows:

"Q. How deep was the sewer ditch along there?

"A. It averaged from five to five and a half feet.

"Q. After the pipe had been laid, what was the size of the pipe?

"A. The pipe was a 12 inch pipe on the inside, making it about a 14 or 15 inches on the outside.

"Q. If the pipe was covered to the top, if the ditch was 5 to 5½ feet deep, then you would subtract that 14 inches after the pipe was in there?

"A. Yes. In the neighborhood of four feet, I would say.

"Q. What can you tell the jury about the soil, whether it is sandy or otherwise?

"A. It is a rather light, sandy soil.

"Q. In making the sewer connections, was it necessary to leave certain areas open to connect up the sewers, such as in front of the Jensen house?

"A. We found it necessary for a short time to leave sections open till the connection could be made to the house sewers.

"Q. I will hand you Plaintiff's exhibit F which shows the opening out in front of the Jensens in the street; is that a fair representation of the way those openings were? I have in mind the earth. I think engineers call it the 'angle of repose.' Is there dirt on a slant from each end of that point?

"A. Yes. On the far end, it looks like the excavation has been completely back-filled, and down farther, I see no evidence of pipe, so, I take it, the pipe is covered. But I can't tell from that how much it is covered over the pipe.

"Q. You talk about the 'angle of repose'—the way the dirt slides in and slants. What is the angle of repose for dirt on the ends?

"A. Well, no, I could not call that an angle of repose, because the dirt was usually tramped in and packed, and that could be made most any angle. Almost vertical. Naught.

\* \* \*

"Q. * * * On the 19th day of October, Mrs. Jensen testified that they were filling that street up; do you know anything about that?
"A. They might have been filling it.
"Q. At that time?
"A. That's right.
"Q. Filling up the hole?
"A. They could have been."

■■ Ordinarily, the question of contributory negligence is a jury question, and rarely will courts find that contributory negligence exists as a matter of law. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether a plaintiff is guilty of contributory negligence, the matter becomes a jury question. Whether or not the given act may be negligence or not negligence depends upon the circumstances, for, as said in 1 Beven on Negligence, (3rd ed.) at p. 9, "it is not the act that connotes the negligence, but the circumstances." As quoted by Mr. Justice RAND in *Rice v. City of Portland*, 141 Or. 205, 213, 7 P. (2d) 989, 17 P. (2d) 562, from *Degg v. Midland Ry. Co.*, 1 H. & N. 781:

" 'There is no absolute or intrinsic negligence; it is always relative to some circumstances of time, place, or person.' See, also, Grand Trunk Ry. Co. v. Ives, supra, where the court said: 'The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative signficance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence.' "

The authorities cited in defendant's brief are not helpful in the instant case because they are all founded on a different set of facts and circumstances, and it would do no service for us to analyze all of them, for,

after all, it is our duty to take the facts as we have them in the present case and find whether or not the facts are such that but one conclusion can reasonably be drawn from them, keeping in mind all inferences that a jury could justifiably draw from them.

In passing we will consider two Oregon cases cited by defendant, of which defendant in its brief says: "In considering cases which have arisen in this state, mention will be made of those which, it is submitted, adhere to the rule that proceeding in the dark, where a person knows of possibility of danger, is contributory negligence as a matter of law."

The first case is *Massey v. Seller,* 45 Or. 267, 273, 77 P. 397, in which plaintiff proceeded in the dark looking for a water closet and fell into a shaft without knowledge of its existence. He was unfamiliar with the premises, and we said it was "an act of folly on his part to enter on a cruise of exploration and discovery without stopping to determine whether it was safe to proceed."

In *Lewis v. Pacific Greyhound Lines,* 147 Or. 588, 34 P. (2d) 616, plaintiff, after alighting from the bus, moved to the rear of it and proceeded to cross the highway without looking for or paying any attention to traffic when he was struck by an oncoming automobile.

We are unable to draw any parallel between the cases cited and the case we are now discussing.

Defendant cites *Cerrano v. Portland Ry. L. & P. Co.,* 62 Or. 421, 126 P. 37, and *Sullivan v. Mountain States Power Co.,* 139 Or. 282, 9 P. (2d) 1038, and takes from the Cerrano case an excerpt which touches on negligence. The statement quoted is a proper exposition of the law, but the facts in those cases are entirely different from the facts here.

In the Cerrano case a child of the age of four-and-one-half years, in darting out into the street, was struck by a streetcar. We held that it was a pure accident.

The Sullivan case was an action of trespass based upon the power company's failure to prevent trees growing near its transmission lines from coming into contact with its wires.

■ Having carefully considered the matter, we are of the opinion that the facts in the case at bar are such that the trial court did not err in submitting the case to the jury.

The important and outstanding feature of this case is the situation which existed during the afternoon of the accident as observed by plaintiff, to-wit: as she was departing from her home she noticed a bulldozer in front of her property pushing dirt to fill in the ditch. Reasonable minds might differ as to whether an ordinarily prudent person would have believed, as plaintiff believed, that on her return home that evening, the ditch would be filled in. As a matter of fact, the evidence shows that the ditch *was* filled in, excepting for the hole into which plaintiff was precipitated, the same having been left open so that the workmen could connect the sewer pipe which had theretofore been laid. It must be remembered that plaintiff did not step into the hole; she proceeded several steps across the filled ditch and because of the looseness of the soil, her feet sank into the same, thus throwing her sideways into the uncovered hole.

Defendant urges that the piles of dirt should have been a sufficient warning to plaintiff of the presence of holes in the ditch. Plaintiff's answer to this was that she thought that the mounds of dirt were "excess dirt"

to be hauled away. The jury could find this to be a reasonable explanation because the evidence shows that the sewer pipe had been laid, which, of necessity, would fill the space formerly occupied by the dirt.

Defendant further argues that plaintiff was guilty of contributory negligence because she proceeded in the dark after her husband turned off the car lights, and further, because she did not use the flashlight which her husband had in the car. As to the car lights, there was evidence that as she drove up to the ditch, the lights showed only the filled ditch and not the hole, and as to the flashlight, there is no evidence that she knew of its existence, and had the car lights been left burning, or had she used the flashlight, she would have walked into the soft dirt anyhow, so that it was not a question of a light, in our opinion, but the condition of the soft dirt in the ditch which caused the accident.

Defendant next argues that plaintiff was negligent when she took a dangerous route instead of a safe course, which she had done previously. In the Rice case, supra, on the petition for rehearing, Mr. Justice BELT said, at p. 234:

"More specifically, it is asserted that the accident could have been avoided had he lifted his left foot upon being reasonably apprised of a pending danger. The fallacy of this contention, in our opinion, is that it assumes, as a matter of law, that plaintiff had reasonable grounds for believing that he was in imminent danger."

Therefore, in the instant case we cannot assume, as a matter of law, that plaintiff had reasonable grounds for believing that she was in imminent danger because of the circumstances which we have hereinbefore outlined. Affirmed.