[Filed June 24, 1886.]

## JENNIE WONG v. CITY OF ASTORIA.

CRIMINAL LAW—OFFENSE AGAINST TWO JURISDICTIONS—BAWDY-HOUSES— ASTORIA—POWER UNDER CHARTER.—The city of Astoria has power unant "willfully and unlawfully" did the act complained of is equivalent to alleging that it was "knowingly" done.

CRIMINAL LAW—OFFENSE AGAINST TWO JURISDICTIONS—BAWDY-HOUSES, ASTORIA—POWER UNDER CHARTER.—The city of Astoria has power under its charter to pass an ordinance to suppress and prohibit bawdy-houses, and prescribe a punishment for its violation. It is no objection to such an ordinance that the act prohibited is criminal in its nature, or that it is a crime under the general laws of the state.

SAME—TRIAL BY JURY—CONSTITUTIONAL LAW.—The right of trial by jury guaranteed by the constitution of the United States and of the state is

the common-law trial by jury, and a trial for violating a city ordinance is not a criminal prosecution within the meaning of the provisions of these instruments.

SAME—JURY TRIAL ON APPEAL.—Nor is it a deprivation of the right to a trial by jury that the party is not able to obtain it in the inferior court, if provision is made whereby it can be secured upon an appeal by a reasonably simple procedure.

*C. J. Curtis*, for Appellant.

The common council had no power to pass the ordinance. The only power, if a power there be, is simply to " suppress," not to punish or 'imprison, and such power must be expressly conferred or it will be held not to exist. (*Corvallis* v. *Carlile*, 10 Or. 139; *Mount Pleasant* v. *Breeze*, 11 Iowa, 399.) A legislature cannot grant to a municipal corporation power to punish summarily, by ordinance, an offense criminal in its nature, and which is a crime under the general laws of the state. (Const. Or., p. 83, sec. 23, subd. 2; Code, p. 345, sec. 5, p. 458, sec. 764; 1 Dillon on Municipal Corporations, p. 368, sec. 253, note; *Mayor etc. of Savannah* v. *Hussey*, 21 Ga. 80; S. C., 68 Am. Dec. 452; *Reich* v. *State*, 53 Id. 73.) It is contended that an act may be a violation of a state law and a municipal ordinance, and a person can be punished under both. This, however, can be done only where the laws prohibiting the act are not identical. In this case the acts are identical, and where there is a by-law making an act a misdemeanor and a state law upon the same subject, the by-law must give way. (*Burns* v. *La Grange*, 17 Tex. 415; *Welch* v. *Stowell*, 2 Doug. 334; *In re Lee Tong*, 9 Saw. 333.) The legislature cannot confer upon a municipal corporation the power to punish a crime without a jury trial. (Proffatt on Juries, p. 146, sec. 101; *Haines* v. *Levin*, 51 Pa. St. 412; *State* v. *John Everett*, 14 Minn. 439; *Flint River Steamboat Co.* v. *Foster*, 5 Ga. 194; S. C., 48 Am. Dec. 248; *Burns* v. *La Grange*, 17 Tex. 415–643; *Jones* v. *Robbins*, 8 Gray, 341; *Bullock* v. *Geomble*, 45 Ill. 218; *State* v.

*Peterson,* 41 Vt. 504; *Wynehamer* v. *People,* 13 N. Y. 427; *Saco* v. *Wentworth,* 37 Me. 165.) True, it is sometimes held this may be done when a jury can be had on appeal. But the Supreme Court of this state has decided that there is no appeal from a judgment in a municipal court. (*Lafayette* v. *Clark,* 9 Or. 225; Proffatt on Jury Trials, p. 156, sec. 101.)

*George Noland,* for Respondent.

An indictment which describes the crime of keeping a bawdy-house in the statutory language is sufficient without alleging that the house was resorted to by divers persons, men as well as women, or that it was kept for lucre. (*Commonwealth* v. *Ashly,* 2 Gray, 356; *State* v. *Homer,* 40 Me. 438; *State* v. *Carr,* 6 Or. 133.) The fact that an act is made punishable, both by a statute of the state and an ordinance of a city, does not place the two laws in conflict. The same act may be a violation of the laws of two distinct jurisdictions and be punished under both. (*State* v. *Sly,* 4 Or. 277; *State* v. *Bergman,* 6 Id. 341; *Mayor etc. of Mobile* v. *Allaire,* 14 Ala. 400; Bishop on Statutory Crimes, sec. 24.) When the city has a right to pass an ordinance, it has also the right to prescribe a punishment for its violation. (*State* v. *Clarke,* 14 Am. Rep. 471; *Cincinnati* v. *Buckingham,* 10 Ohio, 257.) When the act is in its nature one which constitutes two offenses, one against the state, and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offense under the state law. (*Burckholter* v. *McConnellsville,* 20 Ohio St. 313; *Greenwood* v. *State,* 32 Am. Rep. 539; *McRea* v. *Mayor,* 27 Id. 390; *Levy* v. *State,* 6 Ind. 281; *Waldo* v. *Wallace,* 12 Id. 569, 584; *Hamilton* v. *State,* 3 Tex. App. 643; *State* v. *Williams,* 11 S. C. 288.) A statute permitting a summary conviction by a muni-

cipal court or a court of inferior jurisdiction is constitutional, and the right of trial by jury not invaded, if the right of appeal, unclogged by unreasonable restrictions to a superior court, remains where, as a matter of right, the trial by jury may be had, upon the ground that the defendant can have his case decided by a jury before it is finally settled. (*Morford* v. *Barnes*, 8 Yerg. 444; *McDonald* v. *Schell*, 6 Serg. & R. 240; *Beers* v. *Beers*, 4 Conn. 535; S. C., 10 Am. Dec. 186; *Jones* v. *Robbins*, 8 Gray, 339; *Emerick* v. *Harris*, 1 Binn. 416; Sedgwick on Stat. and Const. Law, 549; *City of Emporia* v. *Vollmer*, 12 Kan. 622–631; *Rolfs* v. *Shallcross*, 1 Pac. Rep. 525.)

Thayer, J.   The appellant, a Chinawoman, was arrested by a police-officer of the city of Astoria, upon a complaint by which she was accused of keeping, setting up, and assisting to keep, willfully and unlawfully, a bawdy-house, in violation of an ordinance of the city. Her attorney filed in her behalf a demurrer to the complaint, upon the grounds that it did not state facts sufficient to constitute a crime against the city of Astoria; that the Police Court thereof had no jurisdiction of the crime charged, or of the person of the defendant; that the ordinance was unconstitutional and void, and was in conflict with the general laws of Oregon.   The Police Court, before whom the prosecution was had, overruled the demurrer, whereupon the appellant demanded a jury trial, but refusing to deposit the jury fee, as provided in the charter of the city, it was denied her, and she was put upon her trial, convicted, and sentenced to pay a fine of fifty dollars and costs of prosecution, or in default thereof be imprisoned in the city jail for twenty days. Refusing to pay the fine, she was committed to the jail. After an ineffectual attempt to obtain a release from the imprisonment upon *habeas corpus*, she petitioned the

honorable circuit judge of said Circuit Court for a writ of review, which was duly allowed by him; but upon the hearing thereof before the said judge, the said judgment of conviction was affirmed; and from which latter judgment this appeal is taken.

The questions presented for the consideration of this court are, the overruling of the demurrer by the Police Court, and the refusal to allow a jury trial. The appellant's counsel urged several points upon the appeal, which I will proceed to notice in their order. The first one is that the complaint did not show in the words of the ordinance that the appellant "knowingly" did the act complained of. This point, I think, was fully answered by the respondent's counsel, that the words "willfully and unlawfully" conveyed the same meaning. To willfully do an act implies that it was done by design—done for a set purpose; and I think that it would necessarily follow that it was "knowingly" done. The second point was, that the court had no jurisdiction of the crime charged. The city of Astoria, under its charter, has power to pass ordinances to "suppress and prohibit bawdy-houses," and a general power to punish for a violation of its ordinances. In view of this, I am unable to comprehend why it is not authorized to adopt suitable measures to carry this power into execution.

The legislative assembly of the state is especially authorized to create by special law corporations for municipal purposes. (Const., sec. 2, art. 11.) And the only limitation upon its authority in that respect is, that the acts incorporating towns and cities shall restrict their power of taxation. (Const., sec. 5, art. 11.) The grant of police powers to a city is an absolute necessity. The maintenance of sanitary regulations and good order are the main inducements to incorporate. And if the power conferred for such purposes were a "barren scepter," the

objects of the incorporation would wholly fail.   The incorporation of a city clothes the municipality with all the necessary means of self-government concerning local affairs.   And a reasonable exercise of the power conferred is not only essential to its maintenance, but is a duty imposed upon the corporators.   The power to suppress and prohibit practices that are demoralizing and pernicious would be of little avail if it could not be vindicated.   The offense directly affects the welfare of the city, and how could the latter suppress and prohibit it unless it had the right to adopt a by-law against it, and affix a penalty for its violation.   The notion that a municipal corporation has no right to prescribe a penalty for the doing an act that is criminal in its nature, or which is a crime under the general laws of the state, cannot be upheld by authority or principle.

An act may be of such a character as to constitute two offenses, one against the state and one against the municipal government; and when that occurs, the party committing it may be punished under both jurisdictions. The authorities cited by the respondent's counsel fully sustain this view.   There seems to have been an inclination, however, to accord to a municipal government the right to impose a penalty in such cases by characterizing the act under another name.   For instance, if a party were to assault and beat another, the right upon the part of the municipality to punish the act as "an assault and battery" would not be conceded, but that it could impose a penalty for fighting, or for a disturbance of the peace, would not be denied.   Under such a theory the affair would have two aspects.   This seems to me to be a sort of flimsy shift, and I think it would be by far more consistent to attach a double aspect to the offense itself than to attempt to attach it to the act.   The latter might logically constitute two offenses, but it can con-

stitute but one act. If a person should, in this state, counterfeit any gold, silver, or other coin of the United States, he would be guilty of a crime against the state, and also against the United States. That would be the inevitable result of the act, and he could be punished by both governments for it, although the constitution of each declares in express terms "that no person shall be put in jeopardy twice for the same offense." There is a seeming inconsistency in this, I confess, but it may better be reconciled by basing the distinction upon tenable grounds than by resorting to a subterfuge.

Another rule seems to have been very much overstrained, and that is, that the power upon the part of a municipal government to prescribe a penalty for doing an act which is an offense under the laws of the state will not be deemed to have been conferred unless a clear intention to delegate it is apparent. The rule is applicable where the power delegated is general; but where a special authority over a particular subject is granted, such as the power to suppress and prohibit a particular practice, and the corporation is invested with authority to adopt ordinances and punish for their violation, the subject is relieved of all doubt. The jurisdiction of the corporation in such case is as complete as terms of grant could make it. How could it be expected that a city government would suppress and prohibit a prevailing vice unless it could provide for the punishment of those engaged in maintaining it. A by-law against the commission of an act, without a vindicatory part, would be as futile as the pope's bull against the comet. I am fully satisfied that the city of Astoria is authorized under its charter to adopt the ordinance under consideration, and impose the punishment inflicted upon the appellant for its violation.

The third and last point includes the refusal of the

police court to allow the appellant a jury trial. The appellant's counsel claims that a trial by jury is secured to a party by the constitution of the state. This is undoubtedly so in all criminal prosecutions; but the enforcement of a penalty for violating a city ordinance is not a criminal prosecution within the meaning of the provision of the constitution upon that subject. The right of trial by jury provided for in the constitution of the United States, and of various states, is understood to mean the common-law trial by jury. If the appellant had been allowed a jury trial under the charter of the city, it would not have been a compliance with the constitutional provision. It must have been by a jury of "twelve good and lawful men," to have fulfilled its terms. Nor is it the deprivation of the right of a jury trial proper, because the party is not able to obtain it in the inferior court. If it can be secured upon appeal by a reasonably simple procedure, the conditions of the guaranty will be answered. The provisions of the charter of the city of Astoria may authorize an appeal in such a case to the Circuit Court. If so, then the appellant's objections upon the constitutional grounds are all obviated. But whether it does or not, I cannot discover that any constitutional guaranty is violated. The procedure was to administer the regulations of the city, and the constitution of the state authorizes the creation of municipal courts for that purpose. (Art. 7, sec. 1.) It was in no sense a trial for a crime against the state. It was a proceeding to enforce a municipal regulation adopted to prevent licentiousness, and to protect the community of the city. A regulation of that character, and a due enforcement of it, are no more an infraction of constitutional rights than the taking of property to pay for the improvement of a street, or inhibiting the erection of wooden structures within certain limits, or prohibiting gunpow-

der, or other explosive substance, from being kept in places that would expose the public to danger.    It is essential that common decency be observed as well as that streets be improved, or that danger from physical causes be guarded against.    The power to regulate such matters is delegated to the corporation for the protection of its members against evil   influences, and dangers to which, by reason of their situation, they are exposed, and the administration of it does not supersede or conflict with the laws of the state, nor, as I can discover, deprive any person of his constitutional rights or privileges.    The judgment of the Circuit Court should be affirmed.