Argued February 21, reversed and remanded with directions April 2, 1929.

## MAY MONNET *v.* W. A. ULLMAN ET AL.

(276 Pac. 244.)

For appellants there was a brief over the name of *Messrs. Winter & Maguire,* with an oral agreement by *Mr. Robert F. Maguire.*

For respondent there was a brief over the names of *Mr. W. F. Magill* and *Mr. William Stuart,* with an oral argument by *Mr. Magill.*

McBRIDE, J.—■ The plaintiff was not an invitee for the reason that the ostensible business of the agent was to sell butter, eggs, *et cetera,* and to drive the truck for that purpose, and not to carry passen-

gers either for hire or otherwise, and, therefore, taking a passenger either for hire, or gratis, was beyond the scope of his authority. As between plaintiff and the driver she may have been an invitee, because having invited her to ride with him he would not have been permitted to deny his authority.

This is not like a case where a person in charge of a vehicle, apparently adapted to the carriage of passengers, for instance, a passenger bus, a railroad car, or perhaps even an ordinary automobile, invites a person, *sui juris,* to ride in the vehicle, or, upon request, permits him to do so. In such a case, the appearance of the vehicle and its apparent adaptation to the purpose of carrying passengers may of themselves be such evidence of authority to give the invitation as to justify the person accepting it in the belief of inviter's authority, and perhaps, if a driver is sent out in charge of such equipage, it might, under certain circumstances, be held to be such a holding out of authority in him as to involve a liability on the part of the real owner of the vehicle. But that question does not arise here where the plaintiff knew the business which defendants were carrying on; knew that it was not carrying passengers, but was sending its driver out to carry and sell eggs, butter and vegetables in a vehicle patently not adapted to or designed for the transportation of passengers. Unless the driver of the truck had affirmative permission from his employers to carry passengers, he had no right to go outside of his duties and invite plaintiff, and she, with the evidence of the scope of his business right before her eyes, had no right to accept and impose an additional responsibility on his employers.

■ We are of the opinion that the great weight of authority in cases of this kind is to the effect that, where there is no permission from the employer to a driver to carry passengers, and where there is no ostensible indication that the vehicle is one designed for that purpose, and, particularly, where the indications are that the vehicle was not designed for that purpose, or where there is no evidence of a practice on the part of the driver to carry passengers so commonly that it should be presumed that the employer must have known of its occurrence, the employer is not liable except under the conditions hereinafter mentioned, and that this doctrine is not out of harmony with the spirit of the decisions of this court we shall presently show.

The case of *West* v. *Kern,* 88 Or. 247, 257 (171 Pac. 413, 416, 1050, L. R. A. 1918D, 920), cited by counsel for plaintiff is entirely different in its facts and legal implications from the case at bar. There, a car, owned and kept by Kern and driven by his servant and occupied by a nephew of Kern, who was teaching the servant how to drive, negligently ran into and injured a stranger, who was riding a motorcycle. There was a mass of testimony and from it the court held that, it having been proved that the automobile was owned and kept by Kern and was being driven by his servant and controlled by his nephew, who had frequently driven it for the benefit of the family of defendant, there was sufficient evidence to go to the jury that the servant and nephew were driving it for the benefit of defendant at the time of the injury, and that they were using it within the scope of their agency. But, here, the scope of defendants' business is admitted all the way through.

Paragraph II of the complaint reads as follows:

"That the defendants are engaged in the business of dealing in eggs, butter and general dairy products, and in the conduct of said business were accustomed to operate trucks in the states of Oregon and Washington, and did, on the 21st day of December, 1925, and prior and subsequent thereto, operate trucks in the state of Washington, and in Cowlitz County, in said state, for the purpose of transporting to and from their customers in said county and state the commodities in which they were dealing."

In paragraph III, it is said that on the twenty-first day of December, 1925, the defendants were operating one of their trucks in Cowlitz County, Washington *"in the course of their business,"* which, as we are informed, by paragraph II, was "transporting to and from their customers in said county the commodities in which they were dealing" to wit, butter, eggs, etc. The driver of the truck invited plaintiff to ride to Kalama, which invitation she accepted. That is, she knowingly accepted an offer to ride in a vehicle, which her own observation showed her was not intended to be used for carrying passengers, without inquiry or reflecting whether the driver employed by the corporation was authorized to use, or misuse the vehicle for the purpose of carrying passengers; a vastly different situation from that of the owner of an automobile, who permits a couple of thoughtless young men to use his passenger vehicle upon the crowded streets of a populous city. The case is not in point here.

In morals, if not in law, the man who loans a passenger automobile to another ought to be considered the guarantor of that person's carefulness and skill to the same extent that he is now responsible for the care and skill of his own chauffeur when driving for his family or himself. The authority of the driver of

an ordinary passenger automobile is evidenced, to some extent, by the fact that he is in possession of it and driving it. The fact that a truck, recognized as belonging to a known firm and used in connection with its business, from its very structure and the uses to which it is being put, is some evidence that its owners are not in the business of inviting or seeking passengers.

*Rook* v. *Schultz,* 100 Or. 482 (198 Pac. 234), is another case cited and relied upon by plaintiff. The defendants in that action are the same parties defendant as those in the present action. One Layman was driving their milk truck and at his instance the plaintiff engaged in delivering milk in bottles from the truck to customers along the route, the plaintiff being a child of twelve years of age. Layman, according to his testimony gave him a dime each day and two bottles of milk as compensation for his services, which consumed about an hour each day. The plaintiff introduced testimony tending to show that defendants knew that he was so engaged in delivering milk (although this testimony was contradicted by defendants). While plaintiff was on the running-board of the truck in the act of taking out a bottle for the purpose of delivery, the truck was started up at considerable speed around a curve throwing the plaintiff off by centrifugal force and injuring him. The court instructed the jury in substance that, if *defendants knew that plaintiff was engaged in delivering milk* from the cars and the act of the driver in accelerating the speed was negligent, and the plaintiff was guilty of no contributory negligence, he was entitled to recover. As remarked by Justice BURNETT, the ownership of the car and the fact that Layman was the driver were admitted, and, for the

purposes of the decision, it was conceded that plaintiff was a volunteer not employed by anyone authorized to employ him. So the case stood as follows: First, a plaintiff engaged in furthering and assisting in the prosecution of the business of the defendant, but not employed by the defendant; second, a defendant having knowledge of the rendition of such services and not objecting thereto to the knowledge of the party rendering such service; third, culpable negligence on the part of the driver; and fourth, a child not *sui juris* and only with the judgment and knowledge of a child twelve years of age entering into and carrying out the arrangement with defendant driver.

This court held that under the circumstances the boy was entitled to recover, but it will be noticed that the key to the situation was the fact that the defendants *knew that he was rendering the service.*

The only instruction excepted to in the lower court is the following:

"If you find the evidence in this case that the defendants were careless and negligent, in that they permitted plaintiff to ride on the running-board of their motor-truck, or they operated their motor-truck at a high and dangerous rate of speed, and that as a direct and proximate result of such negligence, without negligence on the part of the defendants, plaintiff was injured, in that event your verdict should be for the plaintiff, if the accident was not a pure accident and plaintiff was not guilty of contributory negligence. *Of course that takes into consideration the fact that they knew he was riding on the truck.*"

Here, there is no indication that defendants knew or authorized their driver to carry or invite passengers. Both the pleadings and the ostensible indications point to the contrary. The sum and substance

of Justice BURNETT's opinion was that, under the circumstances detailed above, the defendants were liable for the want of ordinary care on the part of the driver. Of course, the fact, that plaintiff was working in the promotion of their interest and along the line of their business and with their knowledge, and was a child not likely to know the intricacies of a valid contract of employment, entered into the decision. The law seems strongly in favor of children, and whether the same rules adopted in the *Rook* v. *Schultz* case would be applied in the case of an adult, need not here be decided. As already shown, the facts are too far variant from those in the present case to make it applicable.

*Peters* v. *Johnson,* 124 Or. 237 (264 Pac. 450), is a case similar to *Rook* v. *Schultz, supra.* Plaintiff, a boy of thirteen years, was not in the employ of defendants, who were the owners and users of the truck, but he was on the truck with their knowledge and consent, and was permitted to assist in the delivery of goods to customers. The judgment was affirmed following the decision in *Rook* v. *Schultz, supra.* Here, again, comes in the knowledge and consent of the owner, and the assistance rendered by the boy in delivering defendants' goods identical with *Rook* v. *Schultz.*

3. *Sather* v. *Giaconi,* 110 Or. 433 (220 Pac. 740), is by far the most plausible case cited by plaintiff, and the holding is this:

"On showing that the instrumentality causing the injury to plaintiff was the property of defendant, there is a presumption that the person other than defendant operating it, was defendant's agent, servant, or employee."

This is no doubt the law as applied to the facts of that case, but we fail to see its application here. In that case it was a fishing boat that did the damage to plaintiff's net. The object of the inquiry was to ascertain who controlled the boat, and the proof was that defendant owned it and collected the pay for the fish that were caught. The court held that there was a presumption that a boat owned by a party was operated by him. But in this case there is no need to invoke a presumption as to who owned the truck, because it is pleaded in the complaint and admitted by the answer that the defendants owned it. It is unnecessary to invoke any presumption as to what business the truck was engaged in, or the scope of that business, because that is also pleaded in the complaint. It was in charge of a driver and being used for the purpose, substantially, of transporting butter and eggs. Having in effect pleaded the scope of defendants' business, which must in the absence of other pleading be taken to be a full statement, there is no room for the court to indulge in the presumption that defendants' driver was authorized to use the vehicle for other purposes than those connected with the defendants' business.

It is true that, if, *in the course of the transaction of defendants' business,* which necessarily involved driving along the highway, defendants' driver should perform that function so negligently as to run against one traveling on the road, or against such a person's vehicle, the defendants would be liable in damages for the reason that the driver was authorized by his employer to drive upon that road and being so authorized, the employer assumes the burden of seeing that he drives carefully. Or, if, in peddling his employer's wares, he invites or permits a

prospective purchase to enter the vehicle for the purpose of examining the merchandise therein, and while the person so invited is entering the vehicle, the driver so negligently moves it that the purchaser is thrown out and is injured, the employer would be liable, for it is part of the driver's business to exhibit his employer's wares with a view to selling them. But in the present instance the only reason for the invitation, if one was given, was not to advance the business of the driver's employer, but solely for the convenience of a lady who wanted a ride. In the absence of wilfulness or wantonness, or permission of the employer, express or implied, the authorities are all against a recovery in a case of that character. (*Hughes* v. *Murdoch S. & T. Co.*, 269 Pa. 222 (112 Atl. 111); *Foster-Herbert C. S. Co.* v. *Pugh*, 115 Tenn. 698 (91 S. W. 199, 112 Am. St. Rep. 881, 4 L. R. A. (N. S.) 804); *Wilkinson* v. *Moore & Preston Coal Co.*, 79 N. H. 335 (109 Atl. 45); *Driscoll* v. *Scanlon*, 165 Mass. 348 (43 N. E. 100, 52 Am. St. Rep. 523); *Barker* v. *Dairymen's Milk P. Co.*, 205 Ala. 470 (88 South. 588); *Zampella* v. *Fitzhenry*, 97 N. J. L. 517 (117 Atl. 711, 24 A. L. R. 666). See notes to above in A. L. R.

■ ■ The authorities from Washington are practically a unit in holding that recovery in instances like the present will not be permitted under the construction given by the courts of that state to its statutes and common law, but the law of Washington is not pleaded or proved, and we cannot take judicial notice of it. We think the fair rule is laid down in *Higbee Co.* v. *Jackson*, 101 Ohio St. 75 (128 N. E. 61, 14 A. L. R. 131), although with a strong dissent by Justice JONES, that while the driver of the vehicle

may have no authority to invite the person, subsequently injured, to ride on the truck driven by him, and the person injured may be, by reason of accepting the invitation, a trespasser as to the employer, yet, being on the vehicle, he is entitled to at least the consideration which the laws give to a trespasser, and that the employer will be liable for any wilful and wanton injury occasioned by the driver.

■ The plaintiff stands in the same light as Jackson, the plaintiff in the case last referred to. As to the employers of the driver, she was a trespasser, and she can only recover by showing that the injuries she received were the result of wilfulness and wantonness of the driver of the truck. As a fair definition of "willful negligence," the following from 8 Words & Phrases, 7484, would seem to be accurate, and we give it inclusive of its citations:

"To constitute 'willful and wanton negligence,' it is not always necessary to prove that the defendant's servants are actuated by ill will towards the plaintiff. Thompson, in his Commentaries on the Law of Negligence, defines 'willful negligence' to be a willful determination not to perform a known duty. The true conception of willful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed, or which is imposed upon the person by operation of law. *Illinois Cent. R. Co.* v. *Leiner* (202 Ill. 624, 67 N. E. 398, 400, 95 Am. St. Rep. 266)."

The term "willfully" was defined by Justice THAYER in *Wong* v. *City of Astoria,* 13 Or. 538 (11 Pac. 295), as follows: "To willfully do an act implies that it was done by design, done for a set purpose." But this definition, while convenient in most cases, is

not strictly applicable when applied to cases like the present.

In the case of *Parker* v. *Pennsylvania Co.*, 134 Ind. 673 (34 N. E. 504, 23 L. R. A. 552), we find this definition, which seems accurate:

"To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi* criminal."

■ ■ There is no evidence indicating wilfulness or wantonness in this case. There is the testimony of one witness that the defendants' vehicle, in his opinion, was being driven "about" thirty miles an hour and that he saw the tires smoking. Whether he saw this before or after the brakes were applied is not clear. There is some evidence that the ground on Elm Street was plowed up in ridges from two to six inches high near the place where the car landed. While other testimony is overwhelmingly opposed to these statements, the jury had a right to believe them. So it must be assumed for the purposes of this case that the driver was going down the grade at thirty miles an hour; that the rate prescribed by a rule of the City of Kalama was twelve miles an hour, and that the pavement was wet and consequently slippery. A wood truck driven by one Burton, who was not called by plaintiff as a witness, was crossing the highway from the west and, according to plaintiff's evidence, had reached about the center of the highway when this accident occurred. If this evidence indicates a wilful intent to injure plaintiff, or a wanton disregard for the consequences, the writer fails to see it. Taking the plaintiff's testimony as true, the driver was

going down a rather steep grade at thirty miles an hour when the rule required him to travel at twelve miles an hour, and in this he was negligent as a matter of law. He saw the truck coming across the highway at right angles to his course and being perhaps unnecessarily alarmed for fear it would cross his path, swerved to the east, and being unable on account of his speed to stop his truck, ran to the edge of the highway and into the ground at Elm Street where his truck upset. He had as much at stake as his passenger, was in fact badly injured, and in an action by his passenger against him, his disregard of the rules of the city, in driving at the prohibited rate of speed, would have justified the jury in finding him guilty of ordinary negligence and requiring him to pay damages. But as to these defendants, plaintiff was not an invitee, because the driver had no authority to invite her. She was not a licensee, because the driver had no authority to license her. Her sole remedy was against the driver. For this reason a nonsuit should have been granted, and it is ordered that the cause be remanded to the Circuit Court with directions to grant a nonsuit.

REVERSED AND REMANDED WITH DIRECTIONS.

COSHOW, C. J., and BEAN and ROSSMAN, JJ., concur.