Argued May 4, affirmed December 31, 1964

CHAFFIN *v.* CHAFFIN

397 P. 2d 771

*William F. Schroeder,* Vale, argued the cause for appellant. On the briefs were Schroeder & Denning, Vale.

*James A. Cox,* Ontario, argued the cause for respondent. On the brief were Yturri, O'Kief & Cox, Ontario.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

PERRY, J.

Nancy F. Chaffin, a minor, through Flora Edith Chaffin, her guardian ad litem, brought an action for

personal injuries against her father Bert L. Chaffin, Sr.

Flora Edith Chaffin brought an action as administratrix of the estate of Emmeline Chaffin, deceased, against Bert L. Chaffin, Sr., the father of the deceased child.

Flora Edith Chaffin also brought an action for personal injuries on her own behalf against her husband Bert L. Chaffin, Sr.

The defendant filed a demurrer to each of the complaints on the ground that each failed to state a cause of action. Each demurrer was sustained by the trial court, and the plaintiff in each action appeals.

The allegations necessary to a determination of the issues presented this court are identical in the complaint of the guardian ad litem and the complaint of the administratrix. Each complaint alleges the following:

"IV.

"That at all times herein mentioned, the defendant was the owner and operator of a certain 1957 Ford Station Wagon. That he was operating it on December 24, 1960, on U. S. Interstate Highway 80 in Malheur County, Oregon, at highway post No. 405.13, approximately six miles North of Ontario, Oregon.

"V.

"That at said time and place, the defendant ran the Ford Station Wagon into and against a 1951 Cadillac Convertible. That immediately following that collision, a second collision occurred when a certain 1955 Ford Coach ran into the Defendant's Ford Station Wagon at that same place.

"VI.

"That at all times herein mentioned, the vehicles mentioned in Paragraphs IV and V were

being operated in a southerly direction on Interstate 80, a three lane public highway near the City of Ontario in the County of Malheur, State of Oregon. Said highway was at all times herein mentioned a public highway.

## "VII.

"That at all times herein mentioned, decedent was an occupant in an automobile owned by his father, Bert L. Chaffin, Sr., and generally described as a 1959 Ford Station Wagon, Oregon License number 9H 294, which at said time was being operated by his father. Said vehicle will be hereinafter referred to as the Chaffin vehicle.

## "VIII.

"That on or about December 24, 1960, at approximately 3:30 a.m., on Interstate 80, collisions occurred involving the vehicles listed in Paragraphs IV and V. The collisions occurred in the following sequence.

"A Ford truck driven by one Morris Eugene Olsen stopped on Interstate 80. A Dodge driven by one Mariano B. Bilbao swerved to pass the Ford Truck and skidded into the West ditch, coming to rest with its headlights pointing in a northerly direction. The Dodge was in the ditch to the North of the Ford truck. The Cadillac driven by one Armond D. Hegge drove past the Dodge and into the rear of the Ford truck. The Chaffin vehicle then drove into the Cadillac. The Ford coach then drove into and collided with the Chaffin vehicle.

## "IX.

"That at the time of said collisions and immediately prior thereto, the defendant drove the Ford Station Wagon in a wilfully heedless, wreckless [sic], wanton, negligent manner, without regard to the safety of plaintiff's decedent in one or more of the following particulars.

"(a) In failing to heed the request and im-

portuning of his wife, Flora Edith Chaffin, to refrain from driving the automobile under the then existing weather conditions, i.e., extremely low visibility, black ice and dense fog.

"(b) In failing to heed the warning of his wife as to the approach of a hazard.

"(c) Defendant negligently drove at a speed which was greater than would permit him to exercise proper control of said vehicle and to decrease speed and to stop as was necessary to avoid an accident and at a speed greater than was reasonable and prudent having due regard to the traffic, surface and width of said highway and all other conditions then existing, including limited visibility due to fog and icy road conditions.

"(d) Defendant negligently failed to maintain a proper or any lookout for other vehicles.

"(e) Defendant negligently failed to observe or heed warning signals indicating an approaching hazard.

"(f) Defendant negligently failed to reduce the speed or stop the Ford Station Wagon so as to avoid said collision.

"(g) Defendant negligently failed to pass to the left of the Cadillac, there being sufficient room to do so in safety."

The unqualified rule that an unemancipated minor cannot maintain an action for tort against a parent was first decided in this country in 1891 in *Hewlett v. George,* 68 Miss 703, 9 So 885, 13 LRA 682. The basis of the decision is that sound public policy "designed to subserve the repose of families and the best interests of society" would forbid such action by the child against the parent. 19 ALR 2d 425.

For many years, the courts having cause to rule upon the question followed the nonliability rule established in *Hewlett v. George,* supra. *Rambo v.*

*Rambo,* 195 Ark 832, 114 SW2d 468; *Trudell v. Leatherby,* 212 Cal 678, 300 P 7; *Mesite v. Kirchenstein,* 109 Conn 77, 145 A 753; *Luster v. Luster,* 299 Mass 480, 13 NE2d 438; *Mannion v. Mannion,* 3 NJ Misc 68, 129 A 431; *Crosby v. Crosby,* 230 App Div 651, 246 NYS 384; *Canen v. Kraft,* 41 Ohio App 120, 180 NE 277; *Briggs v. Philadelphia,* 112 Pa Super 50, 170 A 871; *Roller v. Roller,* 37 Wash 242, 79 P 788, 68 LRA 893, 107 Am St Rep 805, 3 Ann Cas 1; *Securo v. Securo,* 110 W Va 1, 156 SE 750; *Wick v. Wick,* 192 Wis 260, 212 NW 787, 52 ALR 1113.

In *Cowgill, Adm'r v. Boock, Adm'r.,* 189 Or 282, 301, 218 P2d 445, 19 ALR2d 405, Mr. Justice BELT in his opinion stated the rule of absolute nonliability "should be modified to allow an unemancipated minor child to maintain an action for damages against his parent for a wilful or malicious personal tort." In that case, the parent by exerting his parental authority forced his minor son to ride in an automobile driven by him while he was in an intoxicated condition, a ride that resulted in the death of both.

In determining the question of whether or not each plaintiff's complaint states or fails to state a cause of action within the modification of the rule, we must determine the boundaries within which the modified rule has application. That there would be difficulty in fashioning these boundaries was forecast in the dissenting opinions of Mr. Justice LUSK and Mr. Justice BRAND.

■ It is recognized by both the plaintiffs and the defendant that ordinary negligence will not pierce the cloak of parental immunity, nor will gross negligence as defined by this court in *Williamson v. McKenna,* 223 Or 366, 354 P2d 56, for the court was careful to state in *Cowgill, Adm'r v. Boock, Adm'r,* supra, 189

Or 282, 293, "[we] are concerned here with a case involving more than ordinary or gross negligence." And also, in conclusion, on page 301 stated: "Ordinary negligence or the doing of an unintentional wrong can not be the basis for such an action."

The question then presented is,—What greater negligence of a parent than gross will grant a cause of action to a child against the parent?

■■ Each parent, in the rearing of the child, is required under the law to provide maintenance and guidance for that child, and, so long as that parental duty is performed, the family unity is maintained and the parent is entitled to the custody of the child. This family unity the law recognizes and protects against invasion insofar as the parents' duties are concerned. It is only when a parent acts to cause a child to become or when a child becomes a "dependent" or "delinquent" child that the law recognizes a breach of parental duty that will deprive the parent of the custody of the child.

■ Necessarily then, a parent in performing his duties of providing support, discipline and education to his children must have wide discretion. Wealth or poverty, physical strength or weakness, wisdom or mental incapacity are not in themselves criteria for fixing guide lines by which the law judges the performance of parental duties.

■ Physical, mental or financial weakness may cause parents to provide what many a reasonable man would consider substandard maintenance, guidance, education and recreation for their children, and in many instances to provide a family home which is not reasonably safe as a place of abode. But it would be clearly wrong to permit the minor child to hold the parent liable for these unintended injuries. The wide scope of the family life in day to day living should not be

subjected to the scrutiny of the courts for each failure to exercise the care and attention that is required of one individual toward another as a member of the public. To do so would place a far greater burden on parenthood than ought to be permitted, and weaken the reciprocal duties of both parent and child in the family unity of human conduct and relationship. Where a unity of family is maintained, the state is interested. It "* * * may balance the detriment resulting to the child by the abridgement of his rights against the benefits accruing directly to the child from the continuance of the parent-child relationship * * *." *Tucker v. Tucker*, 395 P2d 67 (Okla. 1964).

In *Cowgill, Adm'r. v. Boock, Adm'r.*, supra, this court recognized that the maintenance of the family unity as the foundation of society must be maintained. Mr. Justice BELT, writing for the majority, said (189 Or 282, 297):

> "We appreciate full well that it is a wholesome rule and that it should be the policy of the law to preserve and maintain the security, peace and tranquillity of the home, which indeed is the very foundation upon which our government rests. It is unthinkable that a parent, while acting within the scope of domestic relations, should be brought into court to defend against every unintentional personal tort that might be committed against a minor child. It is common knowledge that a parent, in order to maintain discipline and the quiet and peace of the home, is, in the ordinary course of human events, occasionally obliged to administer reasonable corporal punishment to a minor child."

The court then, while admitting there was no intent by the father to injure or cause the death of his child, stated he was at the time committing an unlawful act, i.e., driving while intoxicated, and exceeded his pa-

rental rights in requiring the child to ride with him in an automobile while in this condition.

In the case of *Falls v. Mortensen*, 207 Or 130, 142, 295 P2d 182, speaking of the law of torts, the court said:

"In this field of jurisprudence we find the following phrases in frequent use, 'wilful misconduct,' 'wilful negligence,' 'wanton negligence,' 'reckless disregard,' 'wanton misconduct,' 'more than gross negligence.' The authorities cited demonstrate that 'wanton negligence' and 'wilful negligence' are terms which should be abandoned. Especially confusing is the use of the word 'wilful' to characterize conduct. We have said that 'wilfully' is synonymous with 'knowingly.' Wong v. City of Astoria, 13 Or 538, 11 P 295. Again, ' "To wilfully do an act implies that it was done by design, done for a set purpose." ' Monnet v. Ullman et al., 129 Or 44, 55, 276 P 244.

" ' "To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is quasi criminal." ' Monnet v. Ullman et al., supra, 129 Or 44, 56, 276 P 244.

"In Fry v. Hubner, 35 Or 184, 186, 57 P 420, wilfully was apparently considered merely a conclusion of law.

"In Siuslaw Timber Co. v. Russell, 91 Or 6, 178 P 214, 'wilfully and knowingly' was held to mean action with knowledge and specific intent.

"In Cowgill v. Boock, 189 Or 282, 218 P2d 445, it was held that a father who drove his automobile while intoxicated and compelled his young son to ride with him, the result being the death of both, was guilty of 'wilful misconduct,' yet there was no intimation that the father intended to kill the boy,

and the concurring opinion stated that 'Of course, he did not intend to do so.' Yet, in the same case, wilful misconduct was defined as follows:

" ' "Willful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional, or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom." Citing numerous authorities.'

"Turning to Words and Phrases, we find a multitude of cases cited in which the word 'wilful' is said to connote design, intent, or specific intent. 45 Words and Phrases, perm ed, pp 187-249. In many other cases wilful is used as synonymous with 'wanton' though the use of the word in that sense is frequently criticized. 45 Words and Phrases, pp 240-243. In view of the fact that there was no suggestion of intent on the part of the father to kill his son, we think that this court in Cowgill v. Boock must have used the word 'wilful' as meaning 'wanton.' The confusion arises from a failure on the part of litigants and some courts to distinguish between intent to act wantonly on the one hand, and intent to injure the particular plaintiff, on the other.

"By way of contrast, in Denton v. Arnstein, 197 Or 28, 250 P2d 407, the complaint alleged that defendant did wilfully, maliciously, deliberately and wrongfully drive his car into the car of plaintiff, and we held that the charge was one of assault and battery. Since 'wilful' has been held to include intention to injure the particular plaintiff (Monnet v. Ullman et al; Siuslaw Timber Co. v. Russell; and Denton v. Arnstein, all supra,) and has also been held to describe wrongful (wanton) action in which there was no specific intent to injure the plaintiff (Cowgill v. Boock, supra), we conclude that as used in this jurisdiction, the word does not connote a definite quality of conduct, and that con-

duct, commonly described as wilful, should be classified as either grossly negligent, wanton or intentional (assault), according to the facts presented, to the end that a clear distinction may be *made between a general intent to act wantonly and a specific intent to injure the plaintiff.*" (Italics ours)

As pointed out in *Falls v. Mortensen,* supra, the Cowgill case apparently holds that a cause of action is granted to an unemancipated minor for wanton misconduct of the parent as distinguished from an intent to cause injury to the child. It is also clear that *Falls v. Mortensen,* supra, distinguishes gross negligence from wanton negligence.

The abuse heaped upon the all-inclusive rule of parent immunity found in *Hewlett v. George,* supra, is to be found in such expression.

"* * * The father who brutally assaults his son or outrages his daughter, ought not to be heard to plead his parenthood and the peace of the home as answers to an action seeking compensation for the wrong. * * *" *Dunlap v. Dunlap,* 84 NH 352, 361, 150 A 905, 71 ALR 1055, 1063.

These, of course, are intentionally inflicted injuries and lie beyond the field of negligence. It is an intentional tort (assault and battery) as distinguished from a negligent act that causes an inintended injury.

Wanton misconduct in the law of torts also partakes of several meanings. A wanton act "always implies something more than a negligent act. * * * 'wanton' implies turpitude, and that the act is committed or omitted of willful, wicked purpose; * * *." *Bailey v. North Carolina R. Co.,* 149 NC 169, 174, 62 SE 912, 914. Thus defined, the act is that of depravity done to inflict injury on someone and is equivalent of malicious.

Also, as pointed out in the note in Restatement, 2 Torts, Negligence 1293, § 500, "wanton or wilful misconduct" is sometimes used to describe an intentional act done in the face of danger with a high degree of probability of substantial harm and as so used by the courts does not require the element of a cruel or wicked purpose.

It is somewhat difficult to determine whether or not the majority of the court intended to include the thought of evil purpose in their definition of 'wilful' in *Cowgill v. Boock,* supra. Mr. Justice BELT wrote the opinion of the majority, which opinion was concurred in by Mr. Justice HAY. Mr. Justice LATOURETTE and Mr. Justice ROSSMAN each wrote specially concurring opinions. Mr. Chief Justice LUSK and Mr. Justice BRAND wrote dissenting opinions, both concurred in by Mr. Justice BAILEY.

There is language in the opinion of Mr. Justice BELT and in the citation of *Parsons v. Fuller,* 8 Cal2d 463, 66 P2d 430, and *Norton v. Puter,* 138 Cal App 253, 32 P2d 172, that wanton conduct is no more than gross negligence as we have defined it in *Williamson v. McKenna,* 223 Or 366, 354 P2d 56.

Mr. Justice LATOURETTE, in his specially concurring opinion, seems to approve the opinion of Mr. Justice BELT on the basis of the fact that the father commanded the child to ride with him while the father was committing an unlawful act, i.e., driving while intoxicated.

Mr. Justice ROSSMAN in his specially concurring opinion also approves of the rule that the wanton conduct may be considered a negligent act of parent toward the child if the facts disclose the doing of an intentional act by a parent which is so cruel that it

cannot be considered as the act of a normal parent. He states:

> "The question that confronts us is whether the father was acting in his capacity as parent when he took the course which brought death to himself, to his son and to his brother. Before solving the problem, let us suppose that a father, while drunk, brutally beats his daughter, or, seizing a gun, shoots her. Should we say that in acting in such a drunken manner he was exercising a parental function, or would it not be more in keeping with the enlightened views of the day to declare that his drunken action was outside the scope of his parental prerogatives." *Cowgill, Adm'r v. Boock, Adm'r,* supra, 189 Or 282, 307.

The opinion of Mr. Justice BELT refers to the parent's act in requiring the child to ride with him after he had become intoxicated as "cruel."

■■■■ Since the majority opinion and the specially concurring opinions all focus attention upon the act of the father in requiring the child to ride with him while he was intoxicated as an act of cruelty, and also describe the act as one which lies beyond the scope of parental authority, we conclude that an act by a parent, whether described as willful or malicious or wanton, which will pierce the veil of parental immunity, is an act which is done with an intention to injure the child or is of such a cruel nature in and of itself as to evidence not a reasonably normal parental mind, but an evil mind, *malo animo*. That a negligent act which, although intentionally done, does not disclose an evil mind, but merely willingness to take great risk in the face of conditions that should warn a reasonably prudent person that there is likelihood of injury is insufficient.

■ We reach the conclusion then that for a petition of a minor child to state a cause of action against a parent, even under the modified rule of *Cowgill v. Boock,* supra, the complaint must allege facts from which a conclusion can be drawn that the parent committed an act so cruel in its nature as to denote a wicked intent to cause injury to someone.

The boundaries now established, we consider the complaints.

■ It is true, the complaints allege the acts were done "in a wilfully heedless, wreckless [sic], wanton, negligent manner," i.e., intentionally. The acts of the defendant said to be negligent are set out and these specific allegations control the general allegations. *Cunningham v. Oregon Farmers Inst.,* 168 Or 452, 124 P2d 304; *Patterson v. Skoglund,* 181 Or 167, 180 P2d 108; *Cosgrove v. Tracey,* 156 Or 1, 64 P2d 1321; *Snabel v. Barber et al.,* 137 Or 88, 300 P 331.

■ The allegations of the complaints disclose that defendant was headstrong and determined to continue with the operation of the automobile in which his family was riding after being warned and in the face of conditions that should have warned a reasonably prudent person that it was dangerous to proceed. Also, that he negligently operated the automobile in the face of these dangerous conditions.

These allegations are sufficient to allege gross negligence, but we find nothing therein that we think could be considered as an act of cruelty in and of itself, disclosing a cruel mind or wicked intent.

The trial court was not in error in sustaining the demurrers.

■ In the wife's complaint against the defendant husband, she alleges as the negligence of the husband:

"VII.

"The plaintiff is informed and believes that the injuries complained of herein, were due to and caused by the negligent, careless, reckless, willful, wanton and unlawful acts of defendant Bert L. Chaffin, Sr., in one or more of the following particulars:

"(a) In that Defendant was operating the automobile in which plaintiff was riding at a high, reckless and unlawful rate of speed, at the time and place where the collision occurred.

"(b) In that Defendant BERT L. CHAFFIN, SR., the driver of the automobile in which plaintiff was riding, failed to keep a proper lookout for other motor vehicles parked or traveling along U. S. Highway 80 at the time and place where the collision occurred.

"(c) In that Defendant BERT L. CHAFFIN, SR. failed to keep the automobile in which plaintiff was riding under proper control and management.

"(d) In that Defendant drove and operated the automobile in which plaintiff was riding along the highway at the time and place where the collision occurred, without regard to the traffic conditions existing along and upon the highway.

"(e) In that Defendant BERT L. CHAFFIN, SR. drove the automobile in which plaintiff was riding into and upon the said Cadillac car in utter disregard of the presence of the truck and the danger to the traveling public along said highway, particularly plaintiff.

"(f) In that Defendant BERT L. CHAFFIN, SR. failed to apply the brakes of the car in which plaintiff was riding, and thereby slacken and diminish its speed, when he saw, or in the exercise of ordinary care should have seen, the said Cadillac

car parked or standing in the main traveled portion of the right lane of said highway, going south.

"(g) In that Defendant failed to observe or heed warning signals indicating an approaching hazard, or in the exercise of ordinary care, failed to observe or heed warning signals, and thereby Defendant's vehicle did collide and come upon the said Cadillac.

"(h) In that Defendant negligently failed to pass to the left of the obstruction in the highway, that is the said Cadillac, though there was at the time sufficient clearance to do so in safety."

The defendant's demurrer raises the question of whether or not the wife may maintain an action against a husband for a negligent tort.

This question was before this court in *Smith v. Smith,* 205 Or 286, 287 P2d 572 (1955). In an excellent and exhaustive opinion written by the late Mr. Justice BRAND, the court unanimously concluded that, since at the common law neither the wife could sue the husband nor could the husband sue the wife for an unintentional tort, therefore, no cause of action for a negligent tort existed in favor of either against the other in this state, and that whether such rights of action should be granted was a legislative question.

The arguments of the plaintiff that *Smith v. Smith,* supra, should be overruled are the same as those that were made in *Smith v. Smith,* to grant a remedy to a spouse for an unintentional injury caused by the negligence of the other spouse. No arguments are advanced that were not then advanced and there has been no change of conditions that would, in our opinion, justify overruling that case. It would only enlarge this opinion and would be of no benefit to again discuss these issues.

The judgment of the trial court is affirmed.

ROSSMAN, J., specially concurring.

I concur in the result reached by the majority, but prefer to submit as my reasons those expressed in my specially concurring opinion in *Cowgill v. Boock,* 189 Or 282, 302, 218 P2d 445, 453.

SLOAN, J., concurring in part and dissenting in part.

I concur with Mr. Justice O'CONNELL's opinion that spousal immunity should no longer be retained. I have doubts, however, as to applying the same rule to parental immunity.

When death occurs to a child as a result of parental neglect it is apparent, of course, that the wrongdoing parent benefits in any recovery. And by the majority opinion only the parent committing the greatest wrong becomes the beneficiary. The same is not true when a child is maimed. In that instance it is the child, protected by a judicially appointed and supervised guardian, who benefits. It does, therefore, appear to me that legislative action would be necessary to properly establish the circumstances and conduct which would justify recovery. To that extent I agree with the majority opinion.

If, however, the limits of liability are to be fixed by the court, I cannot agree that it would only be intentional conduct that would justify liability. I can find no justification for such a rule. For those reasons I cannot agree with the majority.

O'CONNELL, J., dissenting.

I dissent. I believe that we should abolish the doctrine of spousal and parental immunity in this state under the circumstances of this case. Practically everyone who has written upon the subject concludes that the reasons advanced in the cases for employing these

doctrines are unconvincing.[1] There is a growing list of states which have abolished the theory of spousal immunity.[2] At least one state has eliminated parental immunity with some minor qualifications.[3] In the present case the court does not answer the arguments for the abolition of these doctrines but simply rests its decision on the ground that we should follow precedent and that any change should be made by the legislature. I do not subscribe to this philosophy of judicial inertia. We, not the legislature, are responsible for creating the rule of immunity in these cases; we should be as ready to cast the rule aside if it cannot be defended.

The judgment should be reversed and the cause remanded for a new trial.

---

[1] Spousal Immunity: 1 Harper and James, Law of Torts, § 8.10 (1956); Prosser, Torts, § 116, p. 883 (3d ed 1964); McCurdy, Personal Injury Torts Between Spouses, 4 Vill L Rev 303 (1959); Tort Actions Between Husband and Wife, 9 Clev-Mar L Rev 265 (1960); Note, 47 Va L Rev 1450 (1961); Comment, 60 W Va L Rev 294 (1958); Note, 27 Fordham L Rev 422 (1958). Parental Immunity: 1 Harper and James, Law of Torts, § 8.11 (1956); Prosser, Torts, § 116, pp. 886-87 (3d ed 1964); Dunn, Parent-Child Tort Action, 12 Clev-Mar L Rev 341 (1963); Ehrenzweig, Parental Immunity in the Conflict of Laws, 23 U Chi L Rev 474, 478 (1956); McCurdy, Torts Between Parent and Child, 5 Vill L Rev 521 (1960); Comment, A Proposed Modification of the Parental Immunity Doctrine, 23 Ohio St L J 339 (1962); Note, 10 Wayne L Rev 602 (1964); Note, 1964 Wis L Rev 714; Comment, 26 Mo L Rev 152, 187 et seq. (1961).

[2] E. g., Cramer v. Cramer, 379 P2d 95 (Alaska 1963); Klein v. Klein, 58 Cal2d 692, 376 P2d 70 (1962); Brown v. Gosser, 262 SW2d 480, 43 ALR2d 626 (Ky 1953). For extensive citation of other cases, see Anno: Right of One Spouse To Maintain Action Against Other for Personal Injury, § 6, 43 ALR2d 632, 647-51 (1955).

[3] Goller v. White, 20 Wis2d 402, 122 NW2d 193 (1963).