Submitted on briefs April 28, affirmed June 4, petition for
rehearing denied July 7, petition for review denied
by Supreme Court September 29, 1970

KERR, *Appellant, v.* STATE PUBLIC WELFARE
COMMISSION, *Respondent.*

470 P2d 167

28

Howard R. Lonergan and Glenn A. Geurts, Portland, filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, filed the brief for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

The plaintiff-appellant challenges an order declaring him liable for contribution to the defendant in the total sum of $420 for welfare aid given by it over an 18-month period to James D. Kerr, the plaintiff's father. The order was entered by the defendant pursuant to procedures authorized by law under the Ore-

gon Relatives' Responsibility Law, ORS ch 416. Pursuant to plaintiff's petition, this order was duly reviewed by the circuit court, and by its decree, "the findings of fact, conclusions of law and final decision of the defendant" were adopted and affirmed by the court and judgment of $420 accordingly entered against the plaintiff. He appeals, assigning as error, first, the failure to grant him exemption from liability as an exempt relative under ORS 416.030(2)(b), and, second, that the Relatives' Responsibility Law is an unconstitutional Act in that it denies the equal protection of the laws to members of plaintiff's class, namely, children of a person receiving welfare aid.

ORS 416.030 provides:

"* * * * *

"(2) No liability for the support of a needy person shall be imposed under the provisions of ORS 416.010 to 416.260 upon:

"* * * * *

"(b) The child of a needy person if, during the minority of the child, such person wilfully deserted or abandoned the child, or, by expulsion or cruelty, drove the child from the parental home, or, without good cause, was responsible for the child's being 'dependent' as defined by subsection (2) of ORS 418.205."

ORS 418.205 defines a dependent child as one "whose * * * condition is such as to fall within the provisions of paragraphs (a) to (e) of subsection (1) of ORS 419.476."

The plaintiff contends that he was a dependent child under ORS 419.476(1)(e) which provides that a child is within the jurisdiction of the juvenile court if

"Either his parents or any other person having his custody have abandoned him, failed to provide

him with the support or education required by law, subjected him to cruelty or depravity or failed.to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being * * *."

In his brief, plaintiff contends that his father, with respect to him, violated the compulsory school attendance laws and the child labor laws, and failed to furnish him with reasonable medical and dental care.

■ During the appellant's first 18 years, Mr. James Kerr, plaintiff's father, was a gypo logger who migrated from one forest area to another in Oregon, depending upon the availability of timber, and, during the war years, of manpower. Generally the family lived as a unit in remote areas of the state. The life was not an easy one for any of the family. Schooling was upon occasion interrupted both by movement·from one location to another and by distances in excess of those described in ORS 339.030. For example, plaintiff, when about eight years of age, missed a year of school. During that time the family home was well in excess of one and.one-half miles from a public school, and pupil transportation was not furnished by school bus. Under the foregoing statute, then, the law did not require his attendance. Ultimately, he completed the tenth grade. We find no willful violation by the father of the school attendance laws.

Petitioner does not contend he was deserted or abandoned, that he was not well fed, or that he was unfairly discriminated against in comparison with his siblings, considering the normal differences arising from age and sex. During his boyhood, until he was 18, he generally worked long and hard after school and during vacations, without compensation, for and under

the direction of his father, doing a man's work in the woods, often together with his brother. He sustained some injuries while he was under 18, including damage to one hand and eye from the explosion of dynamite caps which he was holding. He makes no claim of intoxication, wanton negligence or intentional injury, however, on the part of his father in connection with any injury he sustained. *Chaffin v. Chaffin*, 239 Or 374, 397 P2d 771 (1964); *Falls v. Mortensen*, 207 Or 130, 295 P2d 182 (1956) (wanton negligence); *Cowgill v. Boock*, 189 Or 282, 218 P2d 445, 19 ALR2d 405 (1950) (intoxication).

■ He contends that the father's conduct alleged was cruelty within the meaning of ORS 416.030(2)(b). In *Chaffin v. Chaffin*, supra, the Supreme Court said:

"* * * [W]e conclude that an act by a parent, whether described as willful or malicious or wanton, which will pierce the veil of parental immunity, is an act which is done with an intention to injure the child or is of such a cruel nature in and of itself as to evidence not a reasonably normal parental mind, but an evil mind, *malo animo*. * * *" 239 Or at 387.

While that case dealt with the type of conduct by a father toward his child necessary to give rise to a right of action on behalf of that child against the father, we think it aptly describes the type of conduct necessary to constitute "cruelty" within ORS 416.030 (2)(b), thereby insulating a child from liability for contribution for the support of a parent under the Act.

■ Thus even though a parent operating a small logging operation employed his own child without compensation therein at an age below that permitted for the particular work under the child labor law then

governed by § 49–402, O C 1930, and thus in violation of the Act, it would not, in the absence of *malo animo* on the part of the father, constitute an exemption under ORS 416.030(2)(b). There is neither any contention nor evidence here which would support such a finding of *malo animo* on the part of the father.

We think, therefore, that the trial court correctly concluded that the appellant is not exempt from liability for support under the Relatives' Responsibility Law, and that its determination in upholding, and that of the defendant in imposing, a liability of $420, is supported by the evidence.

The second contention concerns the claimed unconstitutionality of the Act because it denies the equal protection of the laws to members of the appellant's class—that is, children of a person receiving welfare aid.

Appellant relies heavily on *Dept. of Mental Hygiene v. Kirchner*, 60 Cal2d 716, 36 Cal Rptr 488, 388 P2d 720, 20 ALR3d 353 (1964). There the California Supreme Court held under the California Constitution and statute that since the purpose of a commitment to a mental institution is to "encompass the protection of society from the confined person, and his own protection and possible reclamation as a productive member of the body politic," (60 Cal2d at 720) its statute which imposed liability for the support of the confined person upon his child was unconstitutional because it arbitrarily charged one class—the children—in society for the care of the person committed.

Our Supreme Court, however, has had occasion to consider the application of the equal protection clause, both of the Fourteenth Amendment to the Federal Constitution and Art I, § 20 of the Oregon Constitu-

tion, to the Oregon Relatives' Responsibility Act. In *Mallatt v. Luihn*, 206 Or 678, 701, 294 P2d 871 (1956), the court said:

"The plaintiff contends on two grounds that the 1953 Act violates the equal protection clause of the Fourteenth Amendment to the Federal Constitution and Art I, § 20, of the Constitution of Oregon. It is asserted first that the statute arbitrarily fixes liability with reference to gross income as shown by the relatives' state income tax return, and could result in exempting some relatives of wealth but no income, thereby discriminating against those who file income tax returns. This same contention was urged in *Los Angeles County v. Hurlbut*, 44 Cal App2d 88, 111 P2d 963, and rejected upon the familiar ground that if there is a reasonable basis for classification, and all persons within the class are treated equally, there is no constitutional infirmity in the legislation. The court there held that the 'purpose behind the scheme of proceeding against those filing income tax returns was to abbreviate the labors of those investigating the pecuniary ability of the kindred of a recipient' and that on the assumption 'that the legislative intent was to proceed only against those filing income tax returns, in view of its obvious purpose, this is a natural classification which the legislature, in the exercise of its discretion had the right to designate as the first element in the proof of financial ability.'

"The Hurlbut case was approved and followed in *Kelley v. State Board of Social Welfare*, 86 Cal App2d 627, 186 P2d 429.

"We agree with the reasoning of the California decisions."

The court further held that the legislative classification imposing liability on the children was a reasonable one.

We think that the *Kirchner* case can be clearly dis-

tinguished from the case at bar. Here there was no confinement of the father. He simply was receiving welfare aid. The statute involved in *Kirchner,*①

"\* \* \* by its terms imposes absolute liability upon, and does not even purport to vest in, the servient relatives any right of control over, or to recoup from, the assets of the patient. \* \* \*" 60 Cal2d at 722.

The Oregon statute here involved imposes no such liability on the child of a welfare recipient. Here ORS 416.010(3) defines a person eligible for assistance under ORS ch 416 as a "needy person." It further provides that a grant of assistance under the Act

"\* \* \* shall be prima facie evidence that such person does not have income or resources sufficient to provide himself with food, clothing, shelter and such other essentials as are necessary to sustain life and as are compatible with decency and good health." ORS 416.070(1).

ORS 416.060(2) allows any child found liable to obtain contribution from any of his siblings, and ORS 416.310 makes the estate of a deceased recipient liable therefor.

■ For cases holding contrary to the *Kirchner* case under statutes generally similar to California, see Annotation, 20 ALR3d 363. The Oregon Supreme Court in *In Re Idleman's Commitment,* 146 Or 13, 27 P2d 305 (1933), under a former statute, ORS 428.010 to 428.150, now repealed, requiring named relatives to contribute to the support of the mentally committed, said:

"\* \* \* The appellant seems to believe that, since the state institutions mentioned in this act have been supported in the past by taxation, the state cannot exact a charge from the inmates or their relatives to defray the cost of the inmates'

---

① Welfare and Institutions Code, § 6650.

maintenance. He seems to believe that the state has somehow imposed upon itself a contractual duty to maintain these institutions solely at the expense of the taxpayer. It is evident that both the incompetent and his immediate relatives receive a very valuable service from the state when he is placed under the care of the state's trained psychiatrists in an institution where his prospects for recovery, when present, are facilitated and where he is guarded from the dangers attendant upon his helpless condition. Under such circumstances the contributions made by the taxpayers are for the benefit of the public, while the sum paid in support of any particular inmate by himself or his relatives is for his personal benefit * * *. The sum exacted by this statute is not a tax but is mere payment for a service rendered by the state institutions * * *." 146 Or at 26-27.

We agree with respondent that the reasoning there employed is persuasive here, and that the rule of the *Kirchner* case has no application here.

We conclude, therefore, the claim that the statute imposing liability on appellant is in violation of the equal protection provisions found in Art I, § 20 of the Oregon Constitution and the Fourteenth Amendment to the Federal Constitution is without merit.

The judgment is affirmed.