Argued March 29, affirmed April 23, 1979

## FORSYTH, *Respondent,*
*v.*
## SISTERS OF CHARITY OF
## PROVIDENCE IN OREGON, *Appellant.*
### (No. A7610-13926, CA 11495)

593 P2d 1270

[851]

L. Edward Robbins, Portland, argued the cause for appellant. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, Kenneth D. Renner, and Ridgway K. Foley, Jr., Portland.

Raymond J. Conboy, Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary, and Frank Pozzi, Portland.

Before Schwab, Chief Judge, and Thornton, Gillette, and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant appeals from a judgment entered by the trial court on a jury verdict awarding plaintiff damages for personal injuries. We affirm.

In late December, 1975, plaintiff, who was 75 years old at the time, entered Providence Hospital to undergo a total hip replacement operation.[1] The surgery was successfully completed. Ordinarily, following a total hip replacement a patient will stay in a horizontal position in his hospital bed for several days, because (1) sitting could cause the hip to dislocate, and (2) patients suffer from dizziness as a result of the loss of blood during surgery. The preferred medical practice is to begin physical therapy as soon as the patient is able to tolerate it. One important aspect of the physical therapy is to have the patient walk between and with the support of parallel bars, under the supervision of a physical therapist employed by the hospital. The patient is moved from lying down to standing by the use of a tilt table, a mechanized table with controls on the side operated by the physical therapist. The tilt table is equipped with straps to restrain the patient. When the tilt table is in a standing position, perpendicular to the floor, the patient's feet rest on a small platform an inch to an inch and one-half above the floor. In the present case, on the sixth day after surgery, plaintiff began a program of physical therapy. After hospital personnel wheeled plaintiff to the therapy room, a physical therapist strapped him onto a tilt table and twice elevated him to a standing position for periods of ten minutes. Plaintiff tolerated this therapy without incident. On the next day, a different therapist, Mr. Skogrand, worked with plaintiff. First, after strapping plaintiff to the tilt table, Skogrand raised plaintiff to standing and lowered him to horizontal, as on the previous day, to test plaintiff's

---

[1] A total hip replacement involves the surgical insertion of a plastic socket into the socket of the hip, and a metal shaft, with a ball on the end, into the femur. The new ball and socket approximate the natural bony structures they replace.

tolerance. Then, after raising plaintiff to standing again, Skogrand released the straps and instructed plaintiff to walk the parallel bars, which were immediately in front of the table. Plaintiff walked six lengths, or 60 feet, along the bars, commenting during the walk that he felt "fine." Skogrand then had plaintiff back up to the table and step onto the small platform. At this point, plaintiff told Skogrand he felt weak and dizzy. He passed out shortly. Skogrand attempted to lower the tilt table to horizontal, but was unable to prevent plaintiff from collapsing so as to dislocate his recently rebuilt hip. When plaintiff regained consciousness, he was lying on the floor in pain, with hospital employees attending to him. Subsequently, he underwent a manual surgical procedure to relocate his hip.

Plaintiff sued, alleging that defendant was negligent in the following respects:

"a.  In failing to properly restrain plaintiff so he would not fall from a moving slant table;

"b.  Allowing plaintiff to fall from a physical therapy slant table."

At the close of the evidence, the court denied defendant's motion for a directed verdict. The jury found for plaintiff, awarding $35,000 damages. The court denied defendant's motion for judgment n.o.v. and, in the alternative, for new trial.

■ As defendant's first assignment of error, it argues that the court erred in allowing plaintiff to advance the theory, not pleaded in the complaint, that defendant "negligently overfatigued plaintiff by encouraging him to walk an excessive distance in physical therapy." This is really an objection that the evidence was beyond the scope of the pleadings. This issue arises from testimony by one of plaintiff's expert witnesses to the effect that the therapist, by walking plaintiff 60 feet in his first walk after surgery, was "taking a chance of overfatigue." The court overruled defendant's objection to the admission of this testi-

mony. The record demonstrates that plaintiff did not use this testimony to propound a separate theory of negligence. Rather, plaintiff used this testimony to help establish the circumstances surrounding plaintiff's injury. The jury then could determine what actions by the therapist would constitute the exercise of reasonable care under the circumstances. *See Jensen v. Salem Sand and Gravel Co.,* 192 Or 51, 233 P2d 237 (1951).

The court instructed the jury at the time:

"Ladies and gentlemen, ultimately, when this case is submitted to you, I will tell you the claims which the plaintiff made as to the—the acts that the plaintiff claims were negligent acts on the part of the hospital or its employees. It is only those claims which you would decide upon as to whether or not those particular claims were proven.

"The walking for any distance, in and of itself, the plaintiff has not complained that that was a—or allowing him to walk—was not a negligent act. That is not claimed as such.

"I don't want to make any further comment. I think that's the most I can do at this time, Mr. Renner.

"But bear in mind the fact that the plaintiff was asked to walk any particular distance—that's not complained as being a negligent act on the part of the hospital, not that alone."

These cautionary words sufficiently advised the jury not to consider the testimony on excessive walking as establishing a separate theory of negligence. The trial court did not err in admitting the testimony in question.

■■ As its second assignment of error, defendant argues that the court erred in not directing a verdict for defendant at the close of all the evidence, contending that plaintiff failed to prove either specification of negligence advanced in his amended complaint. In reviewing the denial of a directed verdict, "[w]e examine the facts to determine whether there was

sufficient evidence from which, if believed, the jury could probably find negligence on the part of the defendants and that such negligence caused the accident and injuries." *James v. Carnation Co.,* 278 Or 65, 70, 562 P2d 1192 (1977). Here, plaintiff's expert testified that the very first action to take when a patient feels faint or dizzy is to give the patient support. It is also important to call for help. The physical therapist working with plaintiff at the time of the accident testified as follows:

> "Q When did he start complaining about feeling weak and faint?
> "A After he had returned from the third trip back onto the tilt table, standing there, he stated he was feeling, to my recollection, a little faint.
> "Q Did you strap him when he told you that?
> "A No.
> "Q Did you call for help when he told you that?
> "A No.
> "Q Did you give him support when he told you that?
> "A No.
> "Q You were aware, were you not, with a total hip replacement, that the people, by rotating the hip starting to fall, even if they didn't go all the way to the ground, or twisting, could cause a dislocation?
> "A Yes."

From this testimony alone, the jury could find defendant negligent, and that this negligence caused plaintiff's injuries. We conclude that the trial court did not err in denying defendant's motion for a directed verdict.

Affirmed.